Richard J. EGAN, Appellee,

v.

Leo EGAN and Daniel Egan, Appellants.

No. 55738.

Supreme Court of Iowa.

Nov. 14, 1973.

James S. Updegraff, of Donohue Law Office, West Union, for appellants.

Mark D. Buchheit, West Union, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and McCORMICK, JJ.

McCORMICK, Justice.

This case involves questions relating to farm lease rights in a background of internecine vindictiveness. Defendant Daniel Egan appeals trial court's judgment dismissing his counterclaim for crop damage against plaintiff Richard J. Egan. We affirm.

Richard J. Egan, Bernard Egan, and defendant Leo Egan are brothers. Daniel is Leo's son. Bernard is absentee owner of the 80 acres of Fayette County farmland involved in this dispute. For about 20 years he rented the land to Richard. It included 15 acres of permanent pasture and 65 acres of cropland. In 1968 Richard subleased the cropland to Meryl Keding and his wife Verdine by written cash rent lease.

In the fall of 1968, Richard had problems with the Kedings. They had not paid their cash rent. On October 30, 1968, Richard caused a notice to be served on Mr. and Mrs. Keding alleging they were in violation of their sublease and notifying them that the corn crop had to be harvested by November 1, 1968, unless the rent was paid in full, and that the lease permitted the landlord to take possession, harvest the crops and charge the expense as additional rent. Richard admits however he did not forfeit the lease.

On November 12, 1968, Daniel entered a written lease with Bernard to rent the land for the year commencing March 1, 1969. Daniel entered the land during the third week in November 1968 to do fall plowing. He and Meryl Keding testified that Keding gave him oral permission to do so.

In the meantime Richard rented the permanent pasture to one Harvey Price for the winter. Daniel took an electric fence down which separated the pasture from the cropland. It was his intention to plow the entire 80 acres. When Price attempted to put his cattle in the pasture, Daniel prevented him from doing so. Then on December 3, 1968, Richard filed a petition in equity alleging Leo and Daniel were trespassing upon and damaging his leasehold and asking injunctive relief. He obtained an ex parte injunction that same date restraining Leo and Daniel from entering the 80 acres during his tenancy. Daniel had plowed about 20 acres before issuance of the injunction.

Defendants moved to dissolve the temporary injunction on December 5, 1968, but the motion was not heard until June 11, 1969. After hearing, trial court found Keding had abandoned his tenancy and was without authority to grant defendants permission to enter the premises and held the injunction was properly issued. Since Richard's tenancy expired March 1, 1969, the injunction was dissolved as of that date.

On August 7, 1969, defendants answered plaintiff's petition, denying its material allegations. In addition Daniel filed a counterclaim, amended July 20, 1970, alleging the temporary injunction was wrongful and prevented him from completing fall plowing, causing $2860.00 crop damage the following year. In his reply and answer to counterclaim filed October 10, 1969, plaintiff denied the material allegations of the counterclaim but did not urge defensively that the propriety of the temporary injunction had already been tried and adjudicated in his favor.

On March 10, 1971, defendants filed a motion to transfer the action to law, demand for jury trial, and motion that in the event his motion and demand for jury trial were overruled the case be tried before some judge other than those normally assigned to Fayette County. The motion to transfer to law was sustained, but the jury demand and remainder of the motion were overruled.

The case was tried to the court on March 17, 1971. Trial court later entered findings of fact, conclusions of law, and judgment dismissing plaintiff's petition and Daniel Egan's counterclaim. The counterclaim was denied because the court found for the second time the temporary injunction was proper. Only Daniel appeals. Hereafter he will be referred to as defendant.

Plaintiff did not assert the June 11, 1969, adjudication of the propriety of the temporary injunction in bar of the counterclaim, and his failure to do so makes it unnecessary for us to decide the effect of

defendant's failure to assign that ruling as error. Cf. Goolsby v. Derby, 189 N.W. 2d 909 (Iowa 1971).

The appeal presents three questions: (1) whether trial court erred in overruling defendant's jury demand (2) admitting testimony in violation of the parol evidence rule and (3) in admitting hearsay.

■ I. *The jury demand.* Jury trial may not be had as a matter of right in a law action unless written demand therefor is made not later than ten days after the last pleading directed to an issue triable by jury. Rule 177(b), Rules of Civil Procedure. In this case that pleading was at best the amendment to counterclaim filed July 20, 1970. The jury demand was not made until March 10, 1971. It was more than seven months late.

In such circumstances the court may in its discretion grant the demand "for good cause shown." Rule 177(d), R.C.P. The record does not reveal any effort by defendant to demonstrate good cause for granting his untimely demand. He now argues the reason urged for alternatively asking for a different trial judge constituted good cause. That reason essentially was that a judge regularly serving the county might be unfairly influenced by testimony of a local lawyer expected to appear as a witness for plaintiff in the case.

■ The record shows Judge Shaw arranged for an outside judge to hear the case but a scheduling conflict of defense counsel frustrated that effort. Judge Shaw observed that his acquaintance with the witness was no closer than with other lawyers in the district and he could and would hear and decide the case fairly and objectively. Although we believe it is ordinarily better practice for a judge not to sit as trier of fact when his impartiality has in good faith been questioned in a case where he must pass upon the credibility of a lawyer witness, we do not think Judge Shaw's decision to sit in this case deprived him of discretion to deny the jury demand

or established good cause for granting the demand as a matter of law.

In overruling the jury demand trial court noted it was untimely, no excuse existed for delay in making it, and if it were sustained trial of the case, which had already been continued once at defendant's request, would be further delayed. The record includes a certificate of readiness for trial filed by defendant July 20, 1970, the same day he filed his counterclaim, in which assignment for trial by the court was requested. The case had been assigned for trial as a nonjury case at least twice before the jury demand was made.

The circumstances are similar to those in Schupbach v. Schuknecht, 204 N.W.2d 918 (Iowa 1973) where we held the trial court acted well within the bounds of permitted discretion in overruling a jury demand. We reach the same conclusion here.

■ Trial court did not err in overruling defendant's jury demand in this case.

II. *The parol evidence rule.* The land rented to the Kedings by plaintiff was limited by the express terms of their written lease to the "crop land" on the 80 acres involved here. Plaintiff testified 15 acres were permanent pasture and the remainder was cropland. Daniel alleges trial court erred in overruling his motion to strike this testimony as violative of the parol evidence rule.

We pass the questions of Daniel's standing to invoke the rule since he was not a party to the lease and waiver of any error by his failure to object when Meryl Keding earlier gave essentially the same testimony.

■ The parol evidence rule forbids use of extrinsic evidence to vary, add to, or subtract from a written agreement. Pappas v. Hauser, 197 N.W.2d 607, 611 (Iowa 1972). But the rule does not come into play until by interpretation the meaning of the writing is ascertained, and, as an aid to interpretation, extrinsic evidence is admissible which sheds light on the situation of

the parties, antecedent negotiations, attendant circumstances, and the objects the parties were striving to attain. Hamilton v. Wosepka, 261 Iowa 299, 306, 154 N.W.2d 164, 168 (1967). The testimony of plaintiff was properly received to aid the court in determining what quantity of land came within the term "crop land" as used in the lease.

Trial court did not err in overruling defendant's motion to strike that testimony.

III. *Hearsay*. In order to counter defendant's evidence the injunction was wrongful because he had permission to enter the land from the parties in possession, the Kedings, plaintiff attempted to show the Kedings had surrendered their lease and were without authority to give such permission. Along with other evidence on the subject he succeeded, over defendant's objection, in introducing evidence of two conversations with Meryl Keding. One conversation was with plaintiff and the other with plaintiff's previous lawyer. Plaintiff testified Keding told him in late November 1968 he was turning the land back to him. He said this conversation occurred on the farm after Keding had harvested the beans and corn.

The lawyer testified he telephoned Keding about December 1, 1968, just before the injunction was issued, in an effort to verify information received from plaintiff. He said he asked Keding whether he had turned the land back to plaintiff and his wife and he said "yes." He testified he also asked, "Then they can do anything that they want to with the farm now?" and Keding answered "yes."

Plaintiff offered these conversations as substantive evidence rather than merely as impeachment of Keding's testimony at trial. Cf. Fielding v. LaGrange, 104 Iowa 530, 73 N.W. 1038 (1898).

We extensively discussed the hearsay rule in State v. Miller, 204 N.W.2d 834 (Iowa 1973), quoting with approval the following definition of hearsay from rule 801,

roposed Rules of Evidence for United States Courts and Magistrates:

"(a) Statement. A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.

"(b) Declarant. A 'declarant' is a person who makes a statement.

"(c) Hearsay. 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Plaintiff concedes the testimony as to Keding's statements was properly admitted in evidence only if it comes within an exception to the rule against admitting hearsay. We are persuaded it fits within at least one recognized exception. Keding's statements were admissions in disparagement of his interest in the land and as such may be used vicariously against defendant as one asserting an interest in the land under him.

A concise statement of this exception appears in 2 Jones on Evidence, § 10.10 at 282 (Sixth Ed. 1972):

"Where declarations by a person in possession of land are shown to be in disparagement of his title or adverse to his interest, the statements may be received against the declarant *or those holding under him* on the general principles governing admissions." (italics added).

Since defendant's possessory interest was dependent upon and derived from that of Keding, he is deemed in privity of interest with Keding subject to having Keding's extrajudicial admissions relating to the property used against him. McCormick on Evidence, § 268 (Second Ed. 1972). "The declarations of the privy in estate are deemed in law to be the declarations of the party himself." 29 Am.Jur.2d Evidence § 659 at 710; see 31A C.J.S. Evidence § 247 at 661. The principle is also analyzed, ex-

plained and endorsed in 4 Wigmore, Evidence, §§ 1080–1087 (Third Ed. 1940).

Trial court did not err in overruling defendant's objections to this evidence.

Defendant's assignments of error are without merit. Trial court's judgment is affirmed.