WESTWAY TRADING CORPORATION,
Appellee,

v.

RIVER TERMINAL CORPORATION,
Appellant.

WESTWAY TRADING CORPORATION,
Appellee,

v.

CK PROCESSING CO., Appellant.

No. 63766.

Supreme Court of Iowa.

Jan. 20, 1982.
Rehearing Denied March 12, 1982.

Garry D. Woodward, Des Moines, for appellants.

David J. Meloy of Stanley, Lande, Coulter & Pearce, Muscatine, for appellee.

Considered by LeGRAND, P. J., and McCORMICK, ALLBEE, McGIVERIN and LARSON, JJ.

McCORMICK, Justice.

This controversy demonstrates that molasses can be as slow in December as in January. Defendants River Terminal Corporation ("River Terminal") and CK Processing Co. ("CK") appeal from judgment for plaintiff Westway Trading Corporation in these consolidated cases which were tried to the court. The cases arose from a dispute concerning plaintiff's need for steam to facilitate pumping of molasses from barges into its storage tanks at a Mississippi River barge terminal near Muscatine. The trial court held that plaintiff had a lease right to use a two inch steamline on defendants' premises to bring steam to the dock. The court awarded plaintiff actual and punitive damages from defendants for denying plaintiff use of the line. The court also ordered defendants either to let plaintiff use the line or to grant plaintiff an easement to construct its own steamline over defendants' property at defendants' expense. Defendants appealed and plaintiff cross-appealed. We reverse the award of actual damages but otherwise affirm the trial court in both appeals.

Defendants raise issues of res judicata, correctness of evidentiary rulings, sufficiency of proof of interference with a contractual relationship, the bar of the statute of limitations and waiver, sufficiency of evidence of actual damages, justification for punitive damages, and validity of the order for equitable relief. Plaintiff challenges the court's refusal to award damages for lost profits.

Plaintiff's action is based on allegations of breach of contract, the tort of interference with a contractual relationship, and civil conspiracy. Since March 1, 1964, plaintiff has leased a portion of the terminal site from River Terminal. Another parcel on the site is occupied by CK. Both defendants are managed by Richard Melson, who owns stock in each corporation.

Through its subsidiary Industrial Molasses Corporation, plaintiff operates a molasses terminal on its leased premises. It receives, stores and sells liquid molasses from that site. Because molasses will not flow readily unless warm and some barges do not have an on-board steam capacity, plaintiff occasionally needs steam at the dock to assist in the pumping of molasses from barges through a ten inch pipeline to its storage tanks.

The two inch steamline in question runs from CK property to the dock. Plaintiff alleged that River Terminal Corporation was obligated by the lease to obtain CK's agreement to furnish plaintiff's dockside steam needs through that line. Before the lease was signed and for several months after its execution, CK provided plaintiff with steam through the line, and plaintiff paid River Terminal for it. When Melson then informed plaintiff that CK could not guarantee a supply of steam, plaintiff installed its own boiler and from fall 1964 through 1966 used the two inch line to send its own steam to the dock. Melson then denied plaintiff further use of the line. This occurred at the same time CK became a competitor of plaintiff.

Plaintiff and River Terminal were involved in litigation in 1967 and 1969 in

which the steamline dispute was not an issue. The 1969 suit ended in a consent judgment that defendants assert bars the present action.

The trial court found against defendants on their claim of res judicata. The court also found that the steamline was owned by River Terminal, that plaintiff had a right under the lease to use the line, that plaintiff's alleged loss of profits in the winter of 1972–73 was caused by an "act of God" rather than conduct of defendants, that defendants did commit the tort of interference with plaintiff's lease rights, that plaintiff's action was not barred by the statute of limitations or waiver, that plaintiff was entitled to $3900 in compensatory damages and $3500 in punitive damages, and that plaintiff was entitled to use the existing steamline or to an easement to construct a new one at defendant's expense.

With this background we examine the specific contentions of the parties.

I. *Res judicata.* In its 1969 action against River Terminal, plaintiff sought a declaratory judgment upholding the lease, defining the boundaries of the leasehold and determining plaintiff's right to use truck scales. For denial of use of the truck scales, interference with moving a storage tank, and efforts to evict plaintiff from the premises, plaintiff also sought actual and punitive damages. In addition, plaintiff asked for injunctive relief against River Terminal's interference with its occupancy of the leasehold and its use of the truck scales. The consent judgment confirmed the validity of the lease, reformed it by adding a description of the leasehold, modified it in certain respects not material here, and enjoined River Terminal from interfering with plaintiff's occupancy.

Even though plaintiff's right to use the steamline was neither raised in the petition nor addressed in the judgment, defendants contend that the present action is barred because the lease was "completely examined and reformed" in the prior suit. They argue that plaintiff was obliged to litigate the steamline issue in that case and is now precluded because of its failure to do so.

■ Governing principles are delineated in *B & B Asphalt Co. v. T. S. McShane Co.,* 242 N.W.2d 279, 286 (1976). Res judicata, in the sense of claim preclusion, applies only if the cause of action in the 1969 litigation was the same as the present action. A cause of action is the same when the asserted invasion of rights is the same. A plaintiff is not entitled to a second day in court simply by alleging a new ground of recovery for the same wrong. In order to determine whether the cause of action is the same, we examine the protected right, the alleged wrong, and the relevant evidence. *Id.; Phoenix Finance Corp. v. Iowa-Wisconsin Bridge Co.,* 237 Iowa 165, 175–76, 20 N.W.2d 457, 461 (1945), *cert. denied,* 328 U.S. 844, 66 S.Ct. 1024, 90 L.Ed. 1618 (1946).

■■ In the present case, the protected right is the alleged lease right to use the steamline; the alleged wrong is the denial of such use; the relevant evidence concerns whether the right is granted in the lease and, if so, whether defendants wrongfully denied the right in this case. None of these matters were litigated in the 1969 action. Although defendants argue otherwise, a party is free to bring separate actions on different provisions of a single lease.

The situation is the same in principle as existed in *Bloom v. Steeve,* 165 N.W.2d 825 (Iowa 1969), where this court recognized that an action to collect a promissory note was not barred by an earlier action concerning the right to invoke an acceleration clause.

■ The right to join related causes of action does not bar subsequent litigation of a distinct cause of action that was not joined. The situation is the same as with a permissive counterclaim. See 1B J. Moore, *Federal Practice* ¶ 0.410[1] (2d ed. 1980). This point is illustrated by *Forrest Village Apartments, Inc. v. United States,* 178 Ct.Cl. 490, 371 F.2d 500 (1967). In an earlier action the plaintiff sued to recover a prepayment charge, alleging that a government regulation authorizing the charge was invalid. The court upheld the regulation and found for the defendant in that suit.

In a subsequent action to recover a percentage of charge based on the regulation, the court held that even though the second action could have been joined with the first, the first judgment was not res judicata of the second.

■ We also note that CK was not a party in the 1969 litigation. This alone is sufficient to deny it the benefit of the res judicata doctrine. *See Williamson v. Kelley*, 271 N.W.2d 727, 730 (Iowa 1978); 1B J. Moore, *supra*, ¶ 0.412[1] at 1803.

Because we find the present cause of action is distinct from the causes of action in the 1969 litigation, we hold that the trial court did not err in refusing to sustain defendants' res judicata defense. We have no occasion to consider whether or under what circumstances a declaratory judgment is entitled to res judicata effect. *See Restatement (Second) of Judgments* § 76, comment (c) (Tent. Draft No. 1 1973).

II. *Evidentiary rulings.* Defendants contend the trial court admitted extrinsic evidence bearing on the lease in violation of the parol evidence, hearsay and best evidence rules. They also contend the evidence was insufficient to show that plaintiff's right to use the steamline was provided in the lease.

Correspondence between plaintiff and River Terminal during the period of lease negotiations showing plaintiff's need and desire for steam was received as evidence and considered by the court. The lease demised the premises to plaintiff for the "receiving and handling of molasses." It gave plaintiff "the right to use Terminal property [as required] to discharge and load material." It also gave plaintiff the right to "operate, use, repair, maintain, replace and remove structures, tanks, pipeline, valves . . . for receiving, storing, handling mixing and shipping material." The extrinsic evidence was used by the court as an aid in determining whether the parties intended this language of the lease to include the right to use the steamline.

■ The parol evidence rule is not violated when extrinsic evidence is received to assist the trial court in determining the meaning of contractual language. *Egan v. Egan*, 212 N.W.2d 461, 464–65 (1973). The rule does not come into play until by interpretation the meaning of the writing is ascertained. *Id.* Therefore the rule was not violated in this case.

■ Defendants also contend that the extrinsic evidence constituted inadmissible hearsay. This contention assumes that the evidence was offered to prove the truth of assertions in the correspondence. Instead, however, the documents were offered as circumstantial evidence of the state of mind of the parties during lease negotiations. It was not introduced to prove the truth of the assertions. Thus the evidence was not hearsay. *McCormick's Handbook of the Law of Evidence* § 249 at 590 (2d ed. E. Cleary 1972). The trial court did not err in overruling defendants' hearsay objections.

Nor do we find a violation of the best evidence rule. That rule is explained in *U.S. Homes v. Yates*, 174 N.W.2d 402, 403–04 (Iowa 1970). Defendants argue that the lease rather than the correspondence is the best evidence of the parties' agreement. Rather than invoking the best evidence rule, defendants are merely advancing their parol evidence argument under a different banner. As before, we find it is without merit.

■ Finally, defendants attack the trial court's finding that the evidence showed plaintiff's right to use the steamline was assured in the lease. Because this interpretation rests in part on extrinsic evidence, it has the force of a jury verdict. *See Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 25 (Iowa 1978). That finding is supported by substantial evidence and is therefore conclusive.

■ III. *Business tort issues.* The trial court found both defendants liable on a theory of conspiring in the commission of the business tort of interference with contractual relations. The elements of the tort are: an existing valid contractual relationship or business expectancy, knowledge of this by the interferer, intentional interfer-

ence inducing or causing a breach or termination of the relationship or expectancy, and resulting damage. *See Farmers Co-op Elevator, Inc. v. State Bank*, 236 N.W.2d 674, 679–82 (Iowa 1975); *Restatement (Second) of Torts* §§ 766–766B (1979).

▮ The court found that the tort was committed when Melson informed plaintiff by letter on June 11, 1966, that it could no longer use the steamline. Defendants assert this letter was an act of River Terminal alone. The court, upon substantial evidence of conspiracy, found otherwise. Moreover, a letter of this kind can constitute the tort. *See Restatement (Second) of Torts* § 766, Illustration 3. Furthermore, the court's finding rested on a course of conduct of which the letter was only a part.

Defendants also assert no conspiracy was shown because Melson acted for both defendants and could not conspire with himself. This argument answers itself. The two parties to the alleged conspiracy were the principals, River Terminal and CK. Nothing prevents principals from conspiring with each other through a common agent. That is what the trial court found happened here. We have no basis to interfere.

A question which is not raised, and which we do not address, is whether a party in the position of River Terminal may tortiously interfere with a contract to which it is a party.

▮ IV. *Statute of limitations and waiver.* The statute of limitations for the tortious interference action is five years. § 614.1(4), The Code; *Clark v. Figge*, 181 N.W.2d 211, 216 (Iowa 1970). Defendants contend the present action is barred by the statute because the alleged tort occurred in 1966, and the action was not brought until 1974. Plaintiff alleged additional conduct by defendants subsequent to 1966 and damages sustained during the winter of 1972–73. We need not determine, however, when the tort was complete. This is because we agree with the trial court that defendants had a duty to plead the statute of limitations if they wished to rely on it. *See* Iowa

R.Civ.P. 101. They did not plead it, nor did they offer an acceptable excuse for their failure to do so. *See, generally*, 54 C.J.S. *Limitations of Actions* § 357 at 490 (1948).

The trial court did not err in refusing to impose the bar of the statute of limitations.

Defendant's waiver argument rests wholly on issues of fact which were resolved against their contention. We hold that their evidence was not so strong that the trial court was obliged to find they proved their waiver defense.

V. *Actual damages.* Plaintiff's only pleaded claim for actual damages was the amount of lost profits during the winter of 1972–73. It alleged that defendants' denial of the use of the steamline required it to transport molasses only on barges with boilers aboard. Its theory was that a shortage of such barges in fall 1972 delayed its molasses shipments so long that the barges could not get through because the river froze in December. The trial court found, however, that no transportation delay was caused by defendants and that plaintiff's loss was caused by the early freezing of the river.

The evidence shows plaintiff could have rented portable boilers for use at the dock. It argues this possible past expense was proof of actual damages. The problem, however, is that this expense was never incurred. Evidence was received and the trial court found that on one occasion the towing company had to purchase steam from CK at a cost of $78 and that on several other occasions plaintiff arranged at its expense to send barges a few miles upriver to be steamed at another terminal. The amount of its expense in doing so was not shown.

▮ We take a broad view in determining the sufficiency of evidence of damages. If the evidence shows damages have been sustained, we uphold recovery so long as the record discloses a reasonable basis from which the amount can be inferred or approximated. *See Larsen v. United Federal Savings & Loan Association*, 300 N.W.2d 281, 288 (Iowa 1981). In the

present case, we find evidence that plaintiff suffered damages which were not pled. Assuming the issue was nevertheless in the case, we do not find a reasonable basis in the record from which their amount could be determined.

We therefore reverse the award of compensatory damages.

VI. *Punitive damages.* Defendants attack the punitive damage award on two main grounds. They allege the award cannot stand without an award of actual damages, and they assert the evidence was insufficient on the element of legal malice.

Defendants' first ground is answered by our holding in *Pringle Tax Service, Inc. v. Knoblauch*, 282 N.W.2d 151, 153–54 (Iowa 1979). We recognized that the rule rejects only an award of punitive damages when actual injury has not been shown. We said:

> Harm has been established when the record shows actual damage has been suffered, even though for one reason or another the damages have not been computed or awarded. Therefore we hold that a failure to award actual damages will not bar exemplary damages when actual damage has in fact been shown.

*Id.* at 154. In the present case we have found substantial evidence to support the trial court's finding that plaintiff suffered actual damages but insufficient evidence to support determination of their amount. The predicate for an exemplary damage award under *Pringle* has thus been satisfied.

Punitive damages may be awarded for the tort of intentional interference with a business relationship, if the tort is committed with legal malice. *See Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916, 920 (Iowa 1979); *Team Central, Inc. v. Teamco, Inc.*, 27: s W.2d 914, 923–26 (Iowa 1978). Substantial evidence was adduced in support of the award in this case. The trial court found a persistent course of wrongful conduct by defendants starting with denial of the right to use the steamline. The court found that defendants' conduct was accom-

panied by an intent to harm plaintiff. The court relied particularly on a number of incidents of interference with plaintiff's operations instigated or carried out by Melson which the court called "threatening," "bizarre" or "wrongful."

Defendants have not established any ground for upsetting the punitive damage award.

VII. *Equitable relief.* Defendants' final complaint concerns the trial court's order giving plaintiff the right to use the existing steamline or the right to an easement to construct its own steamline at defendant's expense. They contend equitable relief was not sought and the relief granted was not lawful.

Plaintiff did join an auxiliary request for injunctive relief with its law petition. This pleading was sufficient basis for the court to enter the order which it did. Moreover, in view of the continuing nature of defendants' tort, the order was justified.

Defendants' claim of illegality rests on evidence that it would be unsafe to join plaintiff's boiler to the same steam system as CK's smaller boiler and lower pressure system. This point is moot, however, because the record shows defendants elected to give plaintiff an easement for construction of its own steamline in accordance with the alternative in the court's order.

Except for their attack on the award of actual damages, we find no merit in any of the issues presented for review by defendants. Therefore we reverse the award of actual damages and otherwise affirm on defendants' appeal.

VIII. *The cross-appeal.* The sole issue raised in the cross-appeal is whether the trial court erred in finding that defendants' tort was not the proximate cause of plaintiff's lost profits in the winter of 1972–73. The court found that the damages were caused by the freezing of the river and not by defendants' conduct. Plaintiff points to substantial evidence from which the trial court could have reached a different conclusion. The evidence is not strong enough, however, to make this an excep-

tional case requiring us to say the court was compelled as a matter of law to reach the conclusion urged by plaintiff. *See Wirtanen v. Provin*, 293 N.W.2d 252, 257–58 (1980).

Therefore we affirm on the cross-appeal.

AFFIRMED IN PART AND REVERSED IN PART ON THE APPEAL; AFFIRMED ON THE CROSS-APPEAL.