EDWARD VANTINE STUDIOS, INC.,
Plaintiff-Appellee,

v.

The FRATERNAL COMPOSITE SER-
VICE, INC., Defendant-Appellant.

No. 84–1158.

Court of Appeals of Iowa.

June 25, 1985.

Jere C. Maddux of Heglund, Newbrough, Johnston, Brewer & Maddux, Ames, Iowa, for defendant-appellant.

John L. McKinney, Ames, Iowa, for plaintiff-appellee.

Heard by SNELL, P.J., and HAYDEN, and SACKETT, JJ.

HAYDEN, Judge.

Defendant appeals from the judgment imposed in favor of plaintiff in this action for tortious interference with contracts. Defendant claims: 1) plaintiff did not have valid contracts with the organizations involved; 2) defendant's actions in interfering with plaintiff's contracts were not improper and hence were not actionable; and 3) the trial court erred in its award of compensatory and punitive damages. We reverse the award of punitive damages; the remainder of the trial court's ruling is affirmed.

Plaintiff and defendant are involved in the highly competitive business of photographing composites of fraternities and sororities on various campuses throughout the country. Plaintiff's booking agent completed signed contracts with several fraternities and sororities at Iowa State University for the 1982–83 school year.

In the summer of 1981, a sales manager for defendant visited all the fraternities and sororities at Iowa State, but signed no new contracts. In spring of 1982, the sales manager visited 15 houses on campus and again signed no new contracts. In the summer of 1982, the sales manager talked with officers at all the fraternities and sororities. He returned to many of these houses, and was told that the organizations had existing contracts with plaintiff. The sales manager suggested that the houses investigate the legality of these contracts. On subsequent visits the sales manager signed contracts with twelve houses who had a previous contract with the plaintiff.

All but one of those contracts contained a provision stating that defendant would pay any legal costs or fees incurred in breaking the contracts already held with plaintiff.

Members of the fraternities and sororities expressed dissatisfaction with previous service provided by plaintiff. Defendant attempted to capitalize on these objections by offering a lower price and an earlier delivery date than plaintiff. However, the fraternity and sorority members indicated that they would not have terminated plaintiff's contract except for the insertion of the indemnity clause in defendant's contract. They testified that they were not subjected to any undue pressure from the actions of defendant's sales manager. Plaintiff was notified that its contracts were terminated when its photographer appeared at the fraternity and sorority houses for scheduled photography sessions. Defendant subsequently provided the desired services and all customers were satisfied.

The trial court determined that defendant committed an actionable tort by encouraging the insertion of the indemnity clause. The court awarded plaintiff $5,016 in actual damages and $10,000 in exemplary damages. Defendant brought this appeal.

■ I. We first consider defendant's claim that plaintiff's contracts with the twelve houses were invalid and thus could not be the basis for a claim of tortious interference with contracts. The contracts in this case contained a clause stating that plaintiff could not honor them unless they were received by its office within fourteen days. Because plaintiff presented no evidence at trial that its office received the contracts in the requisite period, defendant claims those contracts were invalid.

We reject this argument. At best, the failure to prove compliance with that condition would render the contracts voidable but would not affect their underlying validity.

A promise may be a valid and subsisting contract even though it is voidable. * * * Thus, by reason of ... conditions precedent to the obligation or even uncertainty of particular terms, the third person may be in a position to avoid liability for any breach. The defendant actor is not, however, for that reason free to interfere with performance of the contract before it is avoided.

*Restatement (Second) of Torts* § 766 comment f(1979). There is no evidence that plaintiff, in whose favor the condition ran, took any action to avoid the contracts due to any failure to receive the contracts from the houses on time. In fact, the record is clear that plaintiff at all times considered the twelve contracts as valid and binding. The contracts were valid; defendant's claim to the contrary is without merit.

II. Defendant's primary contention is that its actions in interfering with plaintiff's contracts were not intentional or improper and hence were not actionable. We disagree.

■ The elements of the business tort of interference with contractual relations are: 1) an existing valid contractual relationship; 2) knowledge thereof by the interferer; 3) intentional interference inducing or causing a breach or termination of the relationship; and 4) resulting damage. *Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 402–03 (Iowa 1982). The first element is present in this case (see Division I above); defendant does not contest the second element (its knowledge of the houses' contracts with plaintiff); and the fourth, or damages, element is considered further below. Regarding the third element, *Restatement (Second) of Torts* § 766 (1979) further states that the interference must be both intentional and improper in order to be actionable. Plaintiff need not show the existence of a purpose to injure or destroy an existing contract. *C.F. Sales, Inc. v. Amfert, Inc.*, 344 N.W.2d 543, 555 (Iowa 1983).

■ There can be little question but that defendant intentionally interfered with plaintiff's contracts. Defendant concedes its awareness of those contracts during the course of its attempts to obtain its own contracts with the twelve houses. Defend-

ant advised the houses to investigate the validity of their contracts with plaintiff and then suggested or at least agreed to insert a clause in its own contracts to indemnify the houses for any legal costs or fees incurred by reason of their breach of their contracts with plaintiff. This is certainly an intentional course of conduct which induced the houses not to perform their contracts with plaintiff. *Restatement (Second) of Torts* § 766 (1979).

■ We also believe and agree with the trial court that defendant's interference was improper to the extent that it agreed to indemnify the houses for any legal costs or fees resulting from their breach of plaintiff's contracts. We concede defendant's point that the business of photographing composites for college fraternities and sororities is very competitive and that the various individual companies in that business will seek to expand their own share of the market, very often at the expense of their competitors. We do not, however, believe that this competitive factor gives defendant free reign to use whatever inducements it can think of to lure potential customers away from already existing valid and binding contracts. We adopt the trial court's language on this point:

> If the contracts had been terminated by reason of better price, better service, or better quality alone, ... the Court would not have determined there was a tortious interference with the contracts. It may have caused some claim or cause of action between [plaintiff] and the breaching fraternity and sorority, but it would not have created an actionable tort against the Defendant herein. The Defendant, however, by the insertion, or the encouragement of the insertion, of the indemnity clause has crossed over the line of legitimate competition. It has committed an actionable tort by such activity.

Representatives from five of the fraternities involved testified that they would not have breached their agreements with plaintiff and contracted with defendant without the indemnity clause agreed to by defend-

ant. The importance of this clause to defendant is thus obvious. Our acceptance of such a tactic would render the notion of sanctity of contract a nullity and would indicate that a contract could be breached with impunity merely by having the party inducing the breach assume the financial consequences of such breach.

The trial court correctly found defendant's conduct intentional and improper.

■ III. Defendant raises two issues concerning the trial court's award of damages. First, it questions the sufficiency of the evidence to support the award of $5,016 in compensatory damages. "If the evidence shows damages have been sustained, we uphold recovery so long as the record discloses a reasonable basis from which the amount can be inferred or approximated." *Westway Trading Corp.*, 314 N.W.2d at 403. We need not repeat the trial court's careful calculation of plaintiff's lost profits; it is enough to state that the court's award of compensatory damages is amply supported by the record.

■ We cannot agree, however, that the record supports the trial court's award of punitive damages against defendant. Punitive damages may be awarded in cases of intentional interference with a business or contractual relationship if such interference is done with legal malice. *Westway Trading Corp.*, 314 N.W.2d at 404. Legal malice may be shown by "wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights." *Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916, 920 (Iowa 1979). While we believe defendant's salesman's conduct in suggesting or agreeing to the indemnity clause was improper, we do not believe that it rises to the level of legal malice necessary to support punitive damages. The fraternity representatives testified that he did not try to finalize contracts with them in their initial meeting. Nor did he employ high-pressure sales techniques or criticize or demean plaintiff. Under these circumstances, we reverse the award of punitive damages. The remaining provisions of the trial court's decision are affirmed.

AFFIRMED IN PART; REVERSED IN PART.