William L. ECHOLS, Plaintiff–Appellant,

v.

STATE of Iowa, Defendant–Appellee.

No. 87–1818.

Court of Appeals of Iowa.

Feb. 23, 1989.

Doyle D. Sanders of Kuhle & Sanders, P.C., Des Moines, for plaintiff-appellant.

Thomas J. Miller, Atty. Gen., and Ann Marie Brick, Asst. Atty. Gen., for defendant-appellee.

Considered by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

HABHAB, Judge.

William Echols appeals the decision of the district court [1] awarding him limited recovery for moving expenses incurred when he accepted a position with the Iowa State Commerce Commission in 1981. He contends the trial court erred 1) in considering parol evidence to define the phrase "moving expenses" as stated in his employment contract with the State of Iowa; and 2) in dismissing his remaining claims. We affirm for reasons herein stated.

Our scope of review is on assigned error. Iowa R.App.P. 4. Findings of fact in a law action, which generally means any action triable by ordinary proceedings, are binding upon the appellate court if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

In 1981, William Echols, then a resident of Anchorage, Alaska, accepted a position with the Iowa State Commerce Commission. In the Commission's written employment offer of October 7, 1981, the State agreed to pay Mr. Echols' moving expenses.

Mr. Echols became dissatisfied with the Commerce Commission and resigned his position effective October 31, 1983. At that time, he filed a claim with the State Appeal Board for $4,279.84 for the moving expenses he incurred in 1981.

Mr. Echols, in January 1984, was awarded and paid $5,959.00 by the State Appeal Board upon recommendation of the Special Assistant Attorney General for claims. According to the stipulation of fact, the amount represented $1,483 for mileage and $476 for subsistence. In addition, according to Exhibit A, which is attached to the stipulation of fact [2], an additional $4,000 was awarded to compensate him at the maximum allowable rate for all of his other valid expenses. The "$4,000 includes shipment and storage of furniture, realtor commissions, and recording fees involved in the selling and buying of his residences." He did not dispute or appeal this decision.

In 1985, Mr. Echols was assessed $2,224.18 for back taxes and interest on this award. He filed a second claim with the Appeals Board in June of 1985 to recover this amount. This claim was denied. The action presently before us was originally based upon the denial of this claim. However, his petition was subsequently amended to include alleged unreimbursed expenses relating to realtor commissions in the amount of $5,040.84 and miscellaneous expenses of $1,340. In addition, he makes claim for "Mortgage Interest Rate Differential" [3] of $2,625, for federal tax gross-up of $15,754.74, and state tax gross-up [4] of $609.

---

1. This cause was submitted to the trial court under an agreed and signed stipulation of fact.

2. We decline to strike Exhibit A, as requested by plaintiff, for it is attached to and a part of the stipulation of fact.

3. The mortgage interest rate differential is an expense that arises when a person moves and sells a residence on which he had a mortgage

loan with a determined rate of interest and then purchases another home at a higher rate of interest.

4. The term "gross-up" is the term used for computing the income tax liability on moving expense reimbursements which are not considered deductible.

The matter was submitted to the district court on the agreed stipulation of fact on July 31, 1987. The court issued its ruling dismissing plaintiff-appellant's petition. Mr. Echols then moved for a new trial, and the district court modified its decision by awarding Mr. Echols' judgment on that part of his claim regarding $3,079.94 owed to Bekins Van Lines Co. (This judgment has been paid and satisfied by the State. It is not a part of the appeal.)

Upon appeal, as well as at the trial level, the parties do not dispute that the State of Iowa agreed to pay Mr. Echols' moving expenses. But in the State's letter of offer of employment, this term was not defined or limited in any manner, thus the implications of this phrase were placed in issue. The trial court determined that the state policy regarding reimbursement of moving expenses in effect at the time of the contract was relevant. It declined to adopt the more generous private sector policies as requested by the plaintiff-appellant.

The issue before us then is what did the Iowa State Commerce Commission mean when in its letter to Echols of October 7, 1981, it stated, "We will also pay your moving expenses." The entire paragraph that contains that sentence provides:

As a Merit System position, salary levels are structured by our central personnel bureau. The starting salary for this position is $24,377 annually. Salary beyond this minimum must be justified to the personnel bureau by additional experience that is essentially the same as our work. Considering your previous experience and comparing it with the current salaries of our staff, we are offering you $26,800 annually. An average increase of eight percent is planned for July 1, 1982. We will also pay your moving expenses.

The trial court, in reaching its decision, considered the State's detailed moving expense policy (Policy) in effect at the time the offer of employment was extended to Echols to define "moving expense." The plaintiff objected to the consideration of this "Policy to the extent that Defendant relied upon it to limit the amount of moving expenses that it would pay." The plaintiff elaborated on this objection by stating that the problem with the moving expense policy is "not so much in its definition of moving expenses as it is in the policy's limitation to something less than full reimbursement." To the extent that it limits reimbursement to an amount less than full reimbursement, the plaintiff contends the policy should not have been considered "because it violated the parol evidence rule."

## I.

The supreme court has considered the principles guiding the application of the parol evidence rule. It has stated:

The parol evidence rule is not violated when extrinsic evidence is received to assist the trial court in determining the meaning of contractual language. The rule does not come into play until by interpretation the meaning of the writing is ascertained.

*Westway Trading Corporation v. River Terminal Corporation,* 314 N.W.2d 398, 402 (Iowa 1982) *citing Egan v. Egan,* 212 N.W.2d 461, 464–65 (Iowa 1973).

Contract interpretation involves ascertaining the meaning of contractual words, and extrinsic evidence is admissible as an aid to interpretation when it sheds light on the situation of the parties, antecedent negotiations, the attendant circumstances, and the objects they were striving to obtain.

*Kroblin* citing *Hamilton v. Wosepka,* 261 Iowa 299, 306–13, 154 N.W.2d 164, 168–72 (1967) (cataloguing cases and statements of commentators as to when parol evidence may be used to interpret and explain contracts).

Among the exceptions to the parol evidence rule, however, is the principle that extrinsic evidence may be admitted to show that a writing is not an integrated agreement, not completely clear and unambiguous as to the subject in dispute, or ambiguous with respect to the subject of the lawsuit.

*Kroblin v. RDR Motels, Inc.,* 347 N.W.2d 430, 433 (Iowa 1984) (citations omitted). The word "ambiguous" means, "... 'of

doubtful nature or meaning; uncertain; having a double meaning; open to various interpretations; equivocal.'" *McCarthy v. McCarthy,* 162 N.W.2d 444, 448 (Iowa 1968) (court citing *Roberts v. Roberts,* 231 Iowa 394, 400, 1 N.W.2d 269, 272 (1941).

■ As can be seen from the aforesaid citations, extrinsic evidence may be used as an aid in determining the parties' intent under the written offer of employment. It is admissible for the limited purpose of interpreting any language or terms contained in a contract. *Kitchen v. Stockman Nat'l Life Ins. Co.,* 192 N.W.2d 796, 801 (Iowa 1971). (See *Westway Trading Corp.,* 314 N.W.2d at 462, where the supreme court held that extrinsic evidence could be used to aid the court in determining the parties' intent under a written lease; *Egan v. Egan,* 212 N.W.2d 461, 465 (Iowa 1973) (testimony of plaintiff was properly received to aid the court in determining what quantity of land came within the term "crop land" as used in the lease); *Peters v. Peters,* 214 N.W.2d 151, 157 (Iowa 1974) (extrinsic evidence is admissible to show "what is meant by what is said."))

■ But the parol evidence rule forbids use of extrinsic evidence to vary, add to, or subtract from a written agreement. *Egan,* 212 N.W.2d at 464. However that rule does not apply until by interpretation the meaning of the writing is ascertained. *Westway,* 314 N.W.2d at 402.

Thus, in the case before us, until such time as by interpretation the meaning of the writing is ascertained, the parol evidence rule does not come into play. But as an aid to interpretation, extrinsic evidence is admissible "which sheds light on the situation of the parties, antecedent negotiations, attendant circumstances, and the objects the parties were striving to attain." *Egan,* 212 N.W.2d at 464–65.

The use of extrinsic evidence to aid in interpretation is not without limitation. As Professor Corbin in the preface to Volume 3 of his works on contract says: (quoted with approval in *Hamilton,* 154 N.W.2d at 168):

The purpose of interpretation as justice requires is always the discovery of actual intention:—the intentions of both parties if they are the same,—the actual intention of one party if the other knew or had reason to know what it was,—but absolutely never to give effect to the meaning of words that neither party in fact gave them, however many other people might have given them that meaning. 4 Williston on Contracts, Third Ed., (By Jaeger), section 602 states:

"The word 'interpretation' is used with respect to language itself; ...

\*     \*     \*     \*     \*     \*

"... [It] is properly the process of applying the ordinary legal standard to the words or symbols used in order to determine their meaning or sense and rules of interpretation are adopted for that purpose."

Even if the letter has been asserted to as the complete and accurate integration of the terms of the contract, it must still be interpreted; and those factors that are of assistance in this process may be proved by oral testimony. The "testimony does not vary or contradict the words: it determines that which cannot be varied or contradicted." 3 Corbin on Contracts, Section 579.

As stated by Professor Corbin:

The "parol evidence rule" purports to exclude testimony "only when it is offered for the purpose of 'varying or contradicting' the terms of an 'integrated' contract; it does not purport to exclude evidence offered for the purpose of interpreting and giving a meaning to those terms. The terms of any contract must be given a meaning by interpretation before it can be determined whether an attempt is being made to 'vary or contradict' them."

Corbin on Contracts, sections 536, 543.

■ We believe the trial court correctly applied these rules in reaching its decision. We conclude that the State's moving expense policy is admissible as extrinsic evidence to aid the court in determining what the parties meant by the use of the words "to pay moving expenses." In reaching this conclusion, we note the extrinsic evidence is admissible not to show that the

parties meant something other than what is said, but by showing what they meant by what they said. *Hamilton v. Wosepka,* 261 Iowa 299, 154 N.W.2d 164 (1967).

We are unable to find any statement of materiality in the trial court's decision which suggests that it was varying or contradicting the agreement of the parties by admitting into evidence the State Moving Policy. It is clear the policy is admissible to show the intent of the parties.

Because the trial court's interpretation rests in part on extrinsic evidence, it has the force of a jury verdict. *Westway Trading Corp.,* 314 N.W.2d at 402. That finding is supported by substantial evidence and is therefore conclusive. We affirm.

## II.

When we review the trial court's entire opinion, we do not find that it relied upon the State's moving expense policy to vary the terms of the agreement by limiting the amount of moving expenses that it would pay as suggested by the plaintiff. We interpret the trial court's ruling to mean that it considered that policy only in its interpretation of what the disputed words meant.

It cannot go unnoticed that in his posttrial motion the plaintiff asserted as his sole ground for new trial that the trial court committed error in not allowing the moving bill owed to Bekins Moving Company in the amount of $3,019.94. Plaintiff at that time urged that such an expense was allowable under the State's moving policy. Thereafter the trial court amended its ruling by granting plaintiff judgment in that amount. Prior to that, the plaintiff had been paid a claim submitted in 1981 of $1,748.24 and paid the claim of $5,959, mentioned previously in this opinion. This totals $10,787.28.

Exhibit "A" is the report of the special assistant attorney general for claims. This exhibit is attached to the "Stipulation of Fact" agreed to by the parties and submitted to the court as the factual setting of the dispute. In that exhibit, the assistant attorney general, in recommending the payment of the $5,959 claim, pointed out that

$4,000 is the limit for other valid expenses which includes "shipment and storage of furniture, realtor commissions, etc." When we deducted that part of the claims that are not included in the $4,000 limitation, we find that the plaintiff, when the court ordered the payment of the Bekins Moving bill, was not limited by the $4,000 figure, but was in fact paid in excess of that amount. When we couple that result with the circumstances the plaintiff took into consideration when he submitted his various claims, it is clear to us that the interpretation placed on the disputed words by the trial court is consistent with what the plaintiff at those various times thought the words meant.

Mr. Echols next argues the district court erred in dismissing his claims for reimbursement of real estate commissions, miscellaneous moving expenses, mortgage interest rate differential amount, and income tax "gross up" amounts. Specifically, he asserts the decision to dismiss those claims is not supported by the evidence and is contrary to the law. We disagree and find there is substantial evidence in the record to support the findings of the trial court. We find no errors of law in this respect.

AFFIRMED.