**B & B ASPHALT CO., INC., Appellant,**

v.

**T. S. McSHANE CO., INC., a corporation, et al., Appellees.**

**B & B ASPHALT CO., INC., a corporation, Appellant,**

v.

**T. S. McSHANE CO., INC., a corporation and American Hoist and Derrick Co., a corporation, Appellees.**

Nos. 2–56772, 2–57159.

Supreme Court of Iowa.

May 19, 1976.

David E. Green and William G. Polking, Carroll, for appellant B & B Asphalt Co., Inc.

Kindig, Beebe, McCluhan, Rawlings & Nieland, Sioux City, for appellees T. S. McShane Co., Inc., and T. C. Jones.

Thomas R. Eller of Nash, Eller & Brink, Denison, for appellee American Hoist and Derrick Co.

Heard before MOORE, C. J., and LeGRAND, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

Two related appeals have been consolidated for decision. In each case plaintiff B & B Asphalt Co., Inc. sought damages from defendants T. S. McShane, Co., Inc. (McShane) and American Hoist and Derrick Co. (American). T. C. Jones, president of McShane, was a defendant in the first action but not in the second. Each action was based on the same transaction, the lease-purchase by plaintiff of an allegedly defective asphalt plant from McShane. American was the manufacturer and McShane was American's dealer. In the first action, the trial court entered judgment for defendants on an order sustaining motions for directed verdict. In the second action, the court entered summary judgment for defendants. Plaintiff has appealed from both judgments. We affirm on both appeals.

Plaintiff's first action was brought at law based on allegations of fraud. The petition was in a single division. Trial was to the court. After two days of evidence, just prior to resting, plaintiff moved for leave to amend the petition to conform to proof to add allegations of breach of warranty. The trial court reserved ruling on the motion, plaintiff rested, and the court later overruled the motion. Defendants then moved for directed verdict on the ground of insufficiency of proof of the fraud action. Since the action was tried to the court without a jury, the motions should have been called motions to dismiss, but since a motion to dismiss during trial is equivalent to a motion for directed verdict, the misnomer is not material. See *Quad County Grain, Inc. v. Poe*, 202 N.W.2d 118, 120 (Iowa 1972). The trial court sustained the motions, later entering judgment for defendants. Plaintiff gave timely notice of appeal.

Then plaintiff filed the second action. Its petition contained three divisions, seeking recovery on alternative theories of express warranty, implied warranty, and negligence. Defendants answered. In their answers they alleged the judgment in the first action was a bar to the second action. Then defendants moved for summary judgment on this ground. The parties stipulated that the entire record of the first action could be considered by the court in making its ruling on the motion. They agreed the first action was based on a fraud theory and plaintiff had been unsuccessful in seeking to amend the petition to seek recovery on a warranty theory.

The trial court sustained the motion for summary judgment. Plaintiff gave timely notice of appeal, and the two appeals were consolidated.

### THE FIRST APPEAL

Three questions are presented in plaintiff's appeal from judgment in the first action. The first is whether the petition in that case contained sufficient allegations to support the action on theories of express and implied warranty as well as fraud.

The second is whether the trial court abused its discretion in refusing to allow plaintiff to amend the petition to add breach of warranty allegations. The third is whether the trial court erred in sustaining the motions for directed verdict.

In order to fix the background for resolution of these questions, we will summarize the evidence in its light most favorable to plaintiff.

Plaintiff is a road contractor. It wished to purchase a batch-type asphalt plant for use at Carroll, Iowa, to increase its capacity so that it could bid on state road work. William Launderville, president of plaintiff, commenced negotiations with Herman Snipes, a salesman for McShane, in the fall of 1969 for the purchase of a batch-type plant. McShane was dealer for American, whose Littleford division manufactured such equipment. Launderville met with Snipes and Mike Pregont, district manager of American. He told them that the plant plaintiff purchased would have to meet specifications of the Iowa highway commission so the asphalt it produced could be used to perform state road contracts on which plaintiff planned to bid in March 1970.

The three men reviewed specification books of the highway commission in Launderville's office to determine state specifications. In reliance on his examination of the specification books, without checking directly with the highway commission, Pregont told Launderville American's Littleford asphalt plant model # 123–80 would conform to Iowa specifications.

On October 23, 1969, McShane submitted a written proposal to sell plaintiff a Littleford # 123–80 plant for $106,088. Pregont promised American would make whatever alterations might be necessary to meet highway commission specifications. Pregont said the plant would produce 100 tons of asphalt an hour. Snipes furnished plaintiff with a brochure of American indicating the basic structure of a similar plant could be assembled by six men in six hours. Pregont told Launderville the entire plant could be erected in five days.

Negotiations continued. On December 29, 1969, plaintiff signed an order to purchase the plant basically on the terms of the October proposal, subject to obtaining financing. Delivery was promised in 20 to 22 weeks of the time the order was placed.

Plaintiff could not obtain financing but nevertheless admonished defendants it needed the plant in time to commence work on Carroll County road contracts May 5, 1970. On March 4, 1970, plaintiff and McShane executed an addendum to the October 1969 proposal under the terms of which plaintiff would enter a lease-purchase agreement for the plant. The purchase price with interest would be spread over the five-year lease period. McShane separately ordered and purchased the plant from American.

Launderville showed a brochure on the plant to Ed Lamoureaux, a field inspector for the highway commission, and Lamoureaux noted the design showed a vibratory feeder. He informed Launderville the highway commission required such plants to have belt-type feeders instead. Launderville notified Pregont who verified Lamoureaux's opinion with the highway commission. As a result, American altered the plant and delivered it with the required belt-type feeder. Delivery of plant components started in April 1970.

Various startup problems were encountered. The agreement required plaintiff to furnish labor for assembly of the plant. McShane was obliged to furnish service personnel for five days to assist with expert advice. Because of delivery delays and installation problems of other kinds, it took 25 days to assemble the plant. Assembly was complete on June 22, 1970. A delivery-installation certificate and the lease-purchase agreement were executed by plaintiff on that date.

In the meantime plaintiff had successfully bid on 12 Carroll County road projects in March, ten county projects and two state projects. Work was to commence May 4, 1970, and to be completed September 5, 1970.

When the plant was assembled, Lamoureaux came to the site to calibrate the plant so the asphalt mix would conform with highway commission requirements. He inspected the installation and refused to calibrate it because he found it did not conform to highway commission specifications in five respects. It lacked a revolution counter on the feed unit, lacked a sampling spigot on the asphalt line, the asphalt line was not jacketed, the plant lacked a deaeration chamber, and it lacked a return line which would run from the deaeration chamber to the metering pump. Launderville notified Pregont who called a highway commission engineer. The engineer agreed in behalf of the highway commission to accept the plant so long as the asphalt produced met highway commission standards; the plant was then calibrated, and it commenced operating June 23, 1970.

Plaintiff continued to have trouble with the plant. The meter which controlled the quantity of oil delivered to the mixture did not work correctly and had to be replaced two or three times. Meter problems caused the work to be shut down four or five times during a two and one-half month period for a total of 40 to 50 hours of "downtime", estimated to cost plaintiff $108 per hour in overhead. A problem with the weigh hopper which prevented it from dumping aggregate correctly was also encountered. It caused an additional 60 to 70 hours of downtime. Minor problems with the plant caused another 10 to 20 hours of downtime.

Other delays of undisclosed duration were caused by weather and breakdowns of other equipment.

The ten county projects were started first. The state projects were started August 19 and September 8. Although all projects were scheduled for completion by September 5, the last project was actually completed November 28. The county and highway commission accepted and paid for all this work. No penalty was assessed for delay.

Plaintiff successfully bid on two additional state projects in Carroll County on August 18, 1970. Because it was delayed on the other projects, it was unable to complete these additional jobs. Plaintiff's bonding company was required to complete them. Plaintiff lost its bondability and ceased to function as a going business in December 1970. Its net worth went from $32,542.54 as of March 31, 1970, to a deficit worth of $118,705.07 as of March 31, 1971.

I. *The nature of the original cause of action.* The first question is based on plaintiff's contention the trial court should have recognized in ruling on defendants' motions for directed verdict that the allegations of the petition were broad enough to sustain the action on theories of express and implied warranty as well as fraud. Plaintiff maintains the evidence was sufficient to raise issues for the trier of fact on the elements of warranty. It follows, plaintiff argues, that the trial court erred in sustaining the motions for directed verdict on the sole ground of insufficiency of evidence on the fraud theory.

Two immediate answers appear to this contention.

■ The first answer is that plaintiff did not urge this contention in resisting defendants' motions for directed verdict or at any other time in the trial court. Except for its motion to amend the petition to add warranty allegations, plaintiff relied solely on its allegations and evidence on the fraud theory. Its contention that its original allegations would support recovery on a warranty theory cannot be asserted for the first time here. *Pieper v. Harmeyer*, 235 N.W.2d 122, 126 (Iowa 1975).

In addition, plaintiff stipulated as part of the record on defendants' motion for summary judgment in the second action that its first action was based solely on the fraud theory.

We cannot entertain its contrary contention for the first time here.

■ II. *The proposed amendment.* Plaintiff next contends the trial court erred in overruling its motion for leave to amend to add allegations of breach of warranty at the conclusion of its evidence. It relies on

the principle that an amendment to conform to proof should usually be allowed when it does not substantially change the issues. *Smith v. Village Enterprises*, 208 N.W.2d 35, 37 (Iowa 1973). Allowance of such an amendment is the rule and denial the exception. Nevertheless, a trial court has considerable discretion in ruling on a motion for leave to amend, and we will reverse only when a clear abuse of discretion is shown. *Atlantic Veneer Corporation v. Sears*, 232 N.W.2d 499, 503 (Iowa 1975).

■ A fundamental problem with plaintiff's proposed amendment is that it did not actually conform to proof. The sole warranty alleged in the amendment was that the plant would meet highway commission specifications. Evidence was received that the plant failed to meet those specifications in six particulars, one of which was corrected before delivery and the others of which were waived by the commission. No evidence of damages caused by failure of the machine to meet highway commission specifications had been introduced. We hold it was not an abuse of discretion for the trial court to deny the amendment.

III. *The directed verdict.* Plaintiff's third contention is that the trial court erred in sustaining defendants' motions for directed verdict.

■ In order to recover in a fraud action at law a plaintiff must establish each of the following elements by a preponderance of clear, satisfactory and convincing evidence: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage. *Grefe v. Ross*, 231 N.W.2d 863, 864 (Iowa 1975).

In the present case, the trial court sustained defendants' motions for directed verdict on grounds of plaintiff's failure to offer sufficient evidence on the elements of scienter, intent to deceive, and damages.

■ In ruling on a motion for directed verdict or an equivalent motion to dismiss during trial, a trial court must view the evidence in its light most favorable to the adverse party, here the plaintiff. The mov-

ant is considered to have admitted the truth of all evidence offered by his adversary and every favorable inference which may fairly and reasonably be deduced from it. When a plaintiff has adduced substantial evidence in support of each element of his cause of action, the motion should be overruled. *Larkin v. Bierman*, 213 N.W.2d 487 (Iowa 1973).

With these principles in mind, we agree with the trial court that plaintiff did not offer substantial evidence on the essential elements of scienter, intent to deceive, and damages.

■ A. *Scienter and intent to deceive.* The element of scienter requires a showing that alleged false representations were made with knowledge they were false. This requirement is met when the evidence shows such representations were made in reckless disregard of their truth or falsity. *Hall v. Wright*, 261 Iowa 758, 768–772, 156 N.W.2d 661, 667–669 (1968). Here plaintiff contends Pregont, American's agent, made a representation that the Littleford asphalt plant would conform to highway commission specifications when he did not in fact know what those specifications were. This would at most support plaintiff's claim against American; plaintiff admits no such representation was made by or in behalf of McShane.

■ It is true Pregont testified he did not know what the specifications were before he reviewed the highway commission specification books in Launderville's office, but it is indisputable that based on his examination of those books he thought in fact the plant would conform to those requirements. The trier of fact could find he was not as careful as he should have been and he should have made further inquiry, but we do not believe the trier of fact could find his representation was made in reckless disregard of its truth or falsity.

The element of intent to deceive is closely related. It is ordinarily established from the same evidence which proves the element of scienter. *Smith v. Packard & Co.*, 152 Iowa 1, 6, 130 N.W. 1076, 1077 (1911)

("the deceit consists in inducing the action of the plaintiff by representations known by the defendant to be false"). In the present case plaintiff failed to generate an issue for the trier of fact on the element of intent to deceive on the same basis that it failed to make the requisite showing of scienter. The trial court did not err in sustaining defendants' motions for directed verdict on grounds of insufficient evidence on these elements.

B. *Damages.* Defendants contend plaintiff failed to introduce substantial evidence of its actual damages from the alleged fraud. No claim for exemplary damages was made here.

■ A successful plaintiff in a fraud case is entitled to recover for his actual pecuniary loss sustained as a direct result of the wrong. When the fraud occurs in the sale of personal property, the usual measure of that loss is the difference between the actual value of the property at the time of the transaction and the value it would have had if the representations had been true, the loss of benefit of the bargain. *LaMasters v. Springer,* 251 Iowa 69, 76–77, 99 N.W.2d 300, 304 (1959). However, when recovery of the benefit of the bargain will not make the buyer whole, additional damages will be allowed. *Riley v. Bell,* 120 Iowa 618, 95 N.W. 170 (1903); *Short v. Matteson,* 81 Iowa 638, 639–640, 47 N.W. 874 (1891). The measure of damages in an action for fraud in the sale of personal property is the same as an action for breach of warranty. *Short v. Matteson,* supra; see *W. & W. Livestock, Inc. v. Dennler,* 179 N.W.2d 484, 488 (1970), and citations.

■ Here plaintiff sought to prove damages by showing a diminution in its net worth allegedly caused by defendants' fraud. This was not a satisfactory way to show loss of benefit of the bargain, nor was causal relationship sufficiently shown to support an award of special or consequential damages on this basis.

Plaintiff did not present any evidence of damages proximately caused by the alleged failure of the asphalt plant to meet highway commission specifications. When Lamoureaux discovered in April that the feeder mechanism was not the right type, the right device was added to the plant before delivery. This alteration was not shown to have been a cause of delay or any other problem. The five additional respects in which the machine allegedly did not conform with state specifications were waived by the highway commission so long as the asphalt met state standards. The asphalt met those standards, and the work was accepted. Although plaintiff alleges highway commission specifications required the plant to have a capacity to produce 100 tons of asphalt per hour, the record does not support this allegation. The record would support a finding this was a specification of plaintiff but not of the highway commission.

The damages plaintiff sought to prove were allegedly caused by installation delays and operational malfunctions. Proof of damages because of installation delays was too uncertain to support an award. Proof of damages because of operational malfunctions was sufficient to support an award for special damages by reason of "downtime", but no evidence connected such malfunctions with the alleged failure of the machine to meet highway commission specifications.

The trial court did not err in sustaining defendants' motions for directed verdict based on plaintiffs' failure to adduce substantial evidence of damages caused by the alleged fraud.

We find no reversible error in plaintiff's appeal from adverse judgment in its first action.

## THE SECOND APPEAL

Plaintiff's appeal from adverse judgment in its second action presents one question: did the trial court err in finding the judgment in the first action was a bar to the second action under the doctrine of res judicata?

In their motions for summary judgment, defendants relied on res judicata in its meaning as claim preclusion, a bar to fur-

ther litigation of a claim, rather than issue preclusion, a bar to further litigation of a specific issue. See *Goolsby v. Derby*, 189 N.W.2d 909, 913 (Iowa 1971). "Res judicata, in the sense of claim preclusion, exists when a litigant has brought an action, an adjudication has occurred, and he is foreclosed from further litigation on the claim". Vestal, Res Judicata/Preclusion, p. V–43 (1969).

 Claim preclusion under the doctrine of res judicata is based on the principle that a party may not split or try his claim piecemeal, but must put in issue and try his entire claim or put forth his entire defense in the case on trial. *Swisher & Cohrt v. Yardarm, Inc.*, 236 N.W.2d 297, 299 (Iowa 1975); *Jordan v. Stuart Creamery, Inc.*, 258 Iowa 1, 5–6, 137 N.W.2d 259, 261 (1965), and citations. An adjudication in a former suit between the same parties on the same claim is final as to all matters which could have been presented to the court for determination. A party must litigate all matters growing out of his claim at one time and not in separate actions. *Warnecke v. Foley*, 234 Iowa 348, 350, 11 N.W.2d 457, 458 (1943). For additional discussion of this principle, see *Hutchinson v. Maiwurm*, 162 N.W.2d 408, 410 (Iowa 1968); *Stucker v. County of Muscatine*, 249 Iowa 485, 492, 87 N.W.2d 452, 456–457 (1958); *Hawley v. Davenport R. I. & N. W. Ry.*, 242 Iowa 17, 25–26, 45 N.W.2d 513, 518 (1951); *Bagley v. Bates*, 223 Iowa 836, 273 N.W. 924 (1937), and citations.

In its application to situations where, as here, a defendant pleads a prior judgment in bar of a subsequent action, the principle is incorporated in Restatement of Judgments § 63:

"Where a judgment on the merits is rendered in favor of the defendant, the plaintiff is precluded from subsequently maintaining an action on the same cause of action although he presents a ground for the relief asked other than those presented in the original action, except where the defendant's fraud or misrepresentation prevented the plaintiff from presenting such other ground in the original action."

It is necessary to determine whether plaintiff's first and second actions were the same claim or cause of action within the meaning of this principle.

 Guidance in making that determination exists in *Williamson v. Columbia Gas & Electric Co.*, 186 F.2d 464 (3 Cir. 1950), cert. denied, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951). In *Williamson*, the plaintiff brought separate actions seeking the same recovery on different theories. The first action was based on allegations of conspiracy in violation of the Sherman Act, the second on allegations of violation of the Clayton Act. The court held a dismissal of the second action was a bar to the first action. In doing so the court said:

"As pointed out above, the acts complained of and the demand for recovery are the same. The only thing that is different is the theory of recovery. The same witnesses and documents will be necessary in the trial in both cases. No material fact is alleged in action No. 1 that was not alleged in action No. 2, save the allegations of conspiracy. Everything that plaintiff was entitled to ask for from defendant was included in action No. 2." *Id.* at 470.

The court added an explanation of what constitutes the same "claim" or "cause of action" within the meaning of the res judicata doctrine. That explanation accords with our cases, and we adopt it here:

"Reference to the basic theory of tort liability substantiates the position taken here. To put it in rather elementary tort language, the basis of the plaintiff's recovery is liability-creating conduct on the part of the defendant, the invasion of a legally protected interest of the plaintiff and the necessary causal connection between defendant's acts and plaintiff's injury. The plaintiff having alleged operative facts which state a cause of action because he tells of defendant's misconduct and his own harm has had his day in court. He does not get another day after the first lawsuit is concluded by giving a

different reason than he gave in the first for recovery of damages for the same invasion of his rights. The problem of his rights against the defendant based upon the alleged wrongful acts is fully before the court whether all the reasons for recovery were stated to the court or not." *Ibid.*

Our cases say identity of cause of action is established when the same evidence will maintain both actions. *Young v. O'Keefe,* 248 Iowa 751, 756, 82 N.W.2d 111, 114 (1957); *Band v. Reinke,* 230 Iowa 515, 519–520, 298 N.W. 865, 868 (1941), and citations.

▮ Here the same evidence would be probative in both actions. They arise from the same transaction and depend on evidence of the same events. The parties are agreed plaintiff's first action was based on a theory of fraud. Plaintiff's petition in the second action is in three divisions. In the first division, the conduct alleged in plaintiff's first action to be fraud is alleged instead to constitute express warranties. In the second division, the same conduct is alleged to give rise to implied warranties. In the third division, the same conduct is alleged to be negligent.

Claim preclusion is plainly applicable. In his second action plaintiff sought a second day in court on the same claim he made in the first action. Only the theories of recovery are different. Plaintiff could have advanced all these theories in the first action. It is barred by the defense of res judicata from seeking to do so in the second action.

Plaintiff complains this is unjust because its attempt to amend its petition to add breach of warranty allegations was aborted by the trial court order overruling its motion for leave to amend. An analogous situation was presented in *Bagley v. Bates,* 223 Iowa 836, 273 N.W. 924 (1937). In that case no appeal had been taken in the first case. The court held the adjudication in the prior case was final and was an adjudication of the matter sought to be raised in the amendment as well as in the petition which was tried. Our affirmance of the first appeal here gives similar finality to the adjudication of plaintiff's first action.

Disallowance of the amendment did not occur on a ground of misjoinder but on unrelated grounds we have found to be sufficient. The fact remains plaintiff had the right to plead and attempt to prove the same theory as part of its original action.

The trial court did not err in sustaining defendants' motions for summary judgment in the second appeal.

AFFIRMED ON BOTH APPEALS.