Thomas HUGHES, Appellee,

v.

MASSEY–FERGUSON, INC., Appellant.

No. 91–726.

Court of Appeals of Iowa.

June 25, 1992.

Frederick G. White, Waterloo, and Ronald Pawlak, Birmingham, Mich., for appellant.

William C. Fuerste and Norman J. Wangberg, Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., and Alfred E. Hughes of Hughes & Trannel, P.C., Dubuque, for appellee.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

The plaintiff, Thomas Hughes, and his father, Milton Hughes, live and farm near Cascade, Iowa. In 1973, Milton purchased a new Massey–Ferguson model 760 combine to aid in harvesting his crops. He also purchased a six-row corn head which adapts the combine to the function of harvesting corn. The corn head mounts on the front of the combine and has several working parts. The head has seven "snouts" which fit between the rows of corn. The stalks and ears of corn are brought into each of the rows by gathering chains and are moved to the center or "throat" of the machine by an auger located at the rear of the corn head. As the auger turns, bringing the material to the center, the "beaters" propel the material into the throat where it is transported into the body of the combine to the thresher mechanism.

While using the combine to pick corn on October 7, 1986, Thomas became entangled in the workings of the corn head while the machine was operating, and he suffered horrific injuries. On the day of the accident, Thomas was twenty years old. He had operated this machinery since he was fifteen years old and had performed much of its maintenance and small repairs. A few days before the injury, he had replaced a belt in the engine compartment of the combine.

Both the combine and corn head came with instruction manuals and safety decals which indicated the machinery should be turned off before any maintenance was attempted. The manuals and decals also warned the user to stay away from moving parts. Thomas was familiar with all of these and understood their meaning.

Leading up to the accident, Thomas had stopped the combine's forward movement and raised the corn head, allowing the mechanism to run and clear itself. As he sat in the cab of the combine, he observed smoke coming from under the engine compartment and feared a fire. The source of the smoke appeared to him to be the area which housed the belt he had recently replaced.

Deciding to investigate, Thomas exited the cab. He left the corn head in the raised position with the mechanism operating, contrary to the directions in the operators manual and safety decals. In attempting to reach the engine compartment, he did not descend the stairs and walk around to the other side of the combine on the muddy ground. Instead, he stepped over the guardrailing surrounding the stair platform and placed his foot on the narrow, three-inch-wide rim of the auger trough on the corn head. This maneuver placed him perilously close to the moving parts of the running machinery which was, once again, contrary to the instructions provided by the manufacturer for the safe operation of the equipment. The distance between the ledge and the stair platform had been shortened by the placement of the corn head in the raised position. When Thomas attempted to take another step on the three-inch ledge, he slipped or fell onto one of the snouts of the corn head, and his leg was drawn into the auger. He was pulled to the center by the auger placing him near the beaters, and his body became firmly wedged and trapped in the machinery. Slip clutches then engaged, preventing the auger and beaters from continuing to turn, but other parts did not stop.

His left boot was torn off and taken through the combine, but he protected his stomach from the gathering chains by allowing the chains to wear on his fingers. Unable to free himself, Thomas was not discovered until a coemployee found him approximately an hour later, and a welder had to be summoned to extricate him from the machinery. He remained conscious and in extreme pain for the entire time and suffered serious physical injuries. His injuries necessitated amputation of the majority of his left leg.

On October 16, 1989, Thomas instituted these proceedings against Massey–Ferguson, Inc. The action was based on the theories of strict liability and negligence. Thomas contended (1) Massey–Ferguson was negligent in the design and manufacture of the machinery, and (2) the machinery was in a defective condition being unreasonably dangerous. Massey–Ferguson raised the defenses of comparative fault, assumption of risk, proximate cause, state of the art, and general denial. The jury assessed Massey–Ferguson with eighty-seven percent of the fault and Thomas with thirteen percent and set the amount of damages at $1,699,999.21. The district court denied Massey–Ferguson's posttrial motions and entered judgment on the verdict.

Massey–Ferguson has appealed presenting this court with five assignments of error. Our scope of review is for the correction of errors at law. Iowa R.App.P. 4. Because we find merit in the first of Massey–Ferguson's arguments, we do not address the others. On our review, we find Thomas's strict liability claim should not have been submitted to the jury. On that claim we, therefore, reverse and remand with the instruction judgment be entered for Massey–Ferguson. We also reverse and remand for new trial on Thomas's negligence claim.

I. *Plaintiff's Strict Liability Theory.* Massey–Ferguson asserts Thomas failed to introduce substantial evidence to support all elements of his strict liability claim, and, therefore, the trial court should have directed the verdict or granted Massey–Ferguson's motion for judgment notwithstanding the verdict. We agree.

In deciding these issues, our inquiry is the same as was the trial court's. *Harvey v. Palmer College of Chiropractic,* 363 N.W.2d 443, 444 (Iowa App.1984). We review the evidence with the same principles required for review by the trial court. *Slocum v. Hammond,* 346 N.W.2d 485, 493 (Iowa 1984). A directed verdict is appropriate in cases where any element of the claim is not supported by substantial evidence. *Oberreuter v. Orion Industries, Inc.,* 398 N.W.2d 206, 209 (Iowa App.1986). A court ruling on a motion for directed verdict must view the evidence in the light most favorable to the nonmoving party, *Beitz v. Horak,* 271 N.W.2d 755, 757 (Iowa 1978); Iowa R.App.P. 14(f)(2), and the movant is considered to have admitted the truth of all evidence offered by nonmovant and every

favorable inference that may be deduced from it. *B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976). To overrule the motion, the court must find substantial evidence in support of each element of the claim. *Beitz*, 271 N.W.2d at 757. If reasonable minds could differ, an issue is for the jury. *Harvey*, 363 N.W.2d at 444. The same rule applies to a motion for judgment notwithstanding the verdict. *See Valadez v. City of Des Moines*, 324 N.W.2d 475, 477 (Iowa 1982); Iowa R.Civ.P. 243(b). Furthermore, the motion for judgment notwithstanding the verdict must stand on grounds raised in the directed verdict motion. *Id.*

 To recover on a strict liability claim, the plaintiff must show, among other things, he or she used the product in the intended manner or in a manner reasonably foreseeable by defendant. *See Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 916 (Iowa 1990); *Osborn v. Massey Ferguson, Inc.*, 290 N.W.2d 893, 901 (Iowa 1980). A jury question must have been engendered on this issue for Thomas's strict liability claim to have been properly submitted to the jury. Because we find Thomas's evidence was insufficient to cause reasonable minds to differ on this issue, we hold the strict liability claim should not have been submitted.

Thomas did not present substantial evidence suggesting Massey–Ferguson intended or could reasonably have foreseen that an operator would raise the corn head, leave the corn head mechanism engaged, step over the stair platform guardrailing, and try to traverse a three-inch ledge above the open, turning auger in an attempt to take a short cut route from the cab of the combine to the engine compartment. We remand to the district court with the instruction judgment be entered for Massey–Ferguson on Thomas's strict liability claim.

 II. *Plaintiff's Negligence Theory.* We also reverse and remand for new trial on Thomas's negligence claim. Because the special verdict leaves us unable to detect the theory upon which the jury determined Thomas was entitled to recover dam-

ages, we reverse and remand for new trial on Thomas's negligence claim.

The costs of this appeal are taxed to Thomas Hughes.

For all the reasons stated the judgment of the district court is reversed and remanded with the instruction that judgment be entered for Massey–Ferguson on Thomas's strict liability claim and a new trial be ordered on Thomas's negligence claim.

REVERSED AND REMANDED FOR NEW TRIAL ON THE NEGLIGENCE CLAIM AND FOR ENTRY OF JUDGMENT IN MASSEY–FERGUSON'S FAVOR ON THE STRICT LIABILITY CLAIM.

HAYDEN, J., concurs.

SACKETT, J., concurs and dissents.

SACKETT, Judge (concurring in part and dissenting in part).

I concur in part and dissent in part. I agree with the majority that the plaintiff failed to introduce substantial evidence to support the elements of his strict liability claim. However, I also find the defendant failed to introduce substantial evidence to support a negligence claim.

The plaintiff climbed over a guardrail and walked on a narrow ledge over a moving auger. Plaintiff was an experienced farmer. He knew the dangers of moving equipment. There were warning stickers on the combine warning him of the dangers. Another route was available to him, but he walked on the narrow ledge over the auger because it was quicker.

Plaintiff is a fine young man who suffered a serious injury. The accident was clearly the result of his carelessness in walking on a small ledge over working machinery.

I would dismiss plaintiff's claim. Plaintiff attempted to establish defendant's negligence through the testimony of John Sevart, a graduate mechanical engineer who has no experience or education in the design of farm machinery. He has never used similar machinery and looked at the combine for an hour and a half. He has

been involved in 1,000 litigations (ninety percent of the time for the plaintiff). He has claimed expertise in the design of a number of machines, including turkey feather pluckers, wheelchair lifts, wheelchair equipment, motorcycles, PTO systems, farm augers, cranes, storage harvesters, bulldozers, roller compactors, concrete mixers, feed grinders, garden tractors, and mound balers.

There is no credible evidence defendant was negligent.