**Alda Joan Kentner TIERNEY, Lyman Wakefield Kentner, Jr., Martha Evalyn Kentner Maxwell, Mary Gayle Kentner Lollar, Gary Ohler Kentner, Erma Lee Kentner McGuire, Phyllis Jean Kentner McGuire, and Jacob Cyrus (J.C.) Kentner, Claimants, Appellants,**

v.

**Gladys LANTZ, Executor of the Estate of Zella A. Kentner, Deceased, Appellee.**

No. 92–1578.

Court of Appeals of Iowa.

June 29, 1993.

C.R. Hannan of Perkins, Sacks, Hannan, Reilly & Peterson, Council Bluffs, for appellants.

R. John Swanson of Swanson Law Firm, Red Oak, for appellee.

Heard by OXBERGER, C.J., and DONIELSON, J., and KEEFE, S.J.*

DONIELSON, Judge.

In 1975, Lyman Kentner, a widower with eight adult children, married Zella, a widow with three adult children. Shortly after their marriage, Zella transferred her house in Kansas to herself and Lyman as joint tenants, and Lyman transferred his home in Missouri to himself and Zella as tenants by the entirety. In 1976, they sold the Missouri real estate and lived together in the Kansas home. In 1984, Lyman died and no will was admitted to probate. Zella's nontaxable inheritance tax return listed the Kansas real estate as the only asset owned by Lyman at his date of death.

After Lyman's death, Zella moved to Iowa and created numerous joint tenancy bank accounts in favor of her three children. In 1991, Zella died with a net worth of $233,000. Zella's January 22, 1986, will and December 4, 1989, codicil were admitted to probate. By the terms of this will and codicil, Zella left all of her estate and property to her brother, her sister, and her three children in equal shares, per stirpes.

In March 1992, Lyman's children brought a claim against the estate. They alleged Lyman and Zella had contracted when they married that the combined children of their prior marriages would share equally in their combined estates.

In September 1992, a hearing was held on the claim. Lyman's children introduced into evidence Lyman's and Zella's mutual wills dated February 19, 1976. The wills were unsigned and made no reference to an agreement declaring the wills to be contractual or mutual. However, several of Lyman's children testified regarding conversations they had with their father and Zella between 1976 and 1984. In the conversations, Lyman allegedly stated he and Zella had agreed to divide the assets equally among all of Lyman's and Zella's children.

In its order, the district court found there was credible circumstantial evidence that Lyman and Zella had a testamentary plan in 1976 to dispose of their property, upon the death of the survivor, in equal shares among all eleven children. However, the court found there was no clear and convincing evidence that the parties agreed they would not revoke the 1976 wills or that they understood the testamentary plan was irrevocable. The court noted Lyman's children could only testify as to conversations in which Lyman did all the talking and that Zella had never indicated either agreement or disagreement to Lyman's alleged statements. As a result, the court dismissed the claim of Lyman's children pursuant to the executor's motion following the claimants' presentation of the evidence.

Lyman's children now appeal. They contend the court erred in dismissing their claim against Zella's estate.

■ The review of a claim in probate is tried as a law action. *In re Estate of Voelker*, 252 N.W.2d 400, 402 (Iowa 1977). Our scope of review is for correction of errors of law. Iowa R.App.P. 4.

A court ruling on a motion for directed verdict must view the evidence in the light most favorable to the nonmoving party. *Beitz v. Horak*, 271 N.W.2d 755, 757 (Iowa 1978); Iowa R.App.P. 14(f)(2). Movant is considered to have admitted the truth of all evidence offered by nonmovant and every favorable inference that may be deduced from it. *B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976). To overrule the motion the court must find substantial evidence in support of each element of nonmovant's claim. *Beitz*, 271 N.W.2d at 757. If reasonable minds could differ, an issue is for the jury. *Harvey v. Palmer College of Chiropractic*, 363 N.W.2d 443, 444 (Iowa App.1984).

The parties are in agreement that Kansas law is the applicable law in this matter. Therefore, the question on appeal is whether, under Kansas law, there was sufficient evi-

---

* Senior judge from the 1st Judicial District serving on this court by order of the Iowa Supreme Court.

dence that Zella both understood and intended that she and Lyman were bound to distribute their combined property in the manner stated in the 1976 wills and that this testamentary plan was irrevocable.

At trial, the parties stipulated *In re Estate of Stratmann,* 248 Kan. 197, 806 P.2d 459 (1991), represented the current state of law in Kansas. *Stratmann* holds that "in an action against an estate to enforce an oral contract with a person since deceased the existence of the contract must be established by clear and convincing evidence." 806 P.2d at 463.

 To establish the contractual nature of mutual wills, the claimant must prove either the parties had agreed they would not revoke the wills once made or that the testamentary plan was irrevocable. "Mutual wills made pursuant to an agreement not to revoke are contractual as well as testamentary in nature and impose an irrevocable obligation on the surviving testator upon the death of the other testator." *Id.* at 464 (citation omitted). Contractual or mutual wills which do not refer to a contract may be binding nevertheless if oral testimony at trial provides clear and convincing evidence the parties contracted with each other. *Id.* at 465–66.

 On our review, we find no clear and convincing evidence that the parties agreed they would not revoke their wills. The fact Lyman and Zella at one point had a testamentary plan to provide for all eleven children does not establish Zella had agreed to contractual wills. Neither of the unsigned, February 19, 1976, wills made any reference to a mutual agreement. The only evidence indicating there was some agreement to establish contractual wills came from the self-serving testimony of Lyman's children. We agree with the district court's finding:

> The court does not find this testimony particularly credible because of the interest and bias of the witnesses, and because it is somewhat ambiguous, not remembered exactly and, as noted, is sometimes contradictory. The court finds that the testimony describing statements or actions

attributed to Zella are not clear, direct and weighty.

It is not enough that Lyman believed an agreement to establish irrevocable, contractual wills had been reached. There must be clear and convincing evidence that both parties had reached such an agreement.

As Lyman's children failed to establish by clear and convincing evidence either the existence of an agreement to create contractual wills or that the testamentary plan was irrevocable, we conclude the district court properly dismissed the claim of Lyman's children.

The costs of this appeal are taxed to the claimants.

For the reasons stated, we affirm the judgment of the district court.

**AFFIRMED.**