# IN THE COURT OF APPEALS OF IOWA

No. 14-0298
Filed January 14, 2015

BEN VILLARREAL JR., CLEO MARTINEZ,
and LACASA MARTINEZ TEX MEX, INC.,
    Plaintiffs-Appellants,

vs.

UNITED FIRE & CASUALTY COMPANY
d/b/a UNITED FIRE GROUP,
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Rustin T. Davenport, Judge.

The plaintiffs appeal the district court order granting summary judgment to the insurance company on their bad faith claim. **REVERSED AND REMANDED.**

Bruce H. Stoltze and Eric Updegraff of Stoltz & Updegraff, P.C., Des Moines, for appellants.

Davis L. Phipps, S. Luke Craven, and Stephen Doohen of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

Heard by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, J.**

The plaintiffs, Cleo Martinez, her husband Ben Villarreal Jr., and La Casa Martinez Tex Mex, Inc., appeal the district court order granting summary judgment to defendant United Fire & Casualty Company on their claim alleging the intentional tort of bad faith.[1] We reverse and remand for further proceedings.

## I. Background Facts and Proceedings

In October 2006 the plaintiffs purchased commercial property insurance from United Fire for their restaurant, La Casa, with coverage limits of $386,400 (building replacement) and $374,400 (personal property replacement). The named insured on the policy was La Casa Martinez Tex Mex, Inc. On March 8, 2007, the plaintiffs' restaurant was destroyed in a fire. In November 2007 United Fire paid $108,310 under the policy to mortgagor Community National Bank for the next payment on the destroyed building.

On March 7, 2008, the plaintiffs filed a petition alleging United Fire breached the insurance contract by refusing to pay the amounts due. United Fire answered, alleging the "plaintiffs have been fully compensated for all covered damages." Immediately prior to the March 2011 trial, the parties stipulated the jury did not need to resolve the facts that (1) the three plaintiffs "were insured for the value of the building and the personal property" with United Fire, and (2) an

---

[1] In its appellee's brief, United Fire challenges a separate court order reinstating the case under Iowa Rule of Civil Procedure 1.944 and raises a separate issue—whether the court abused its discretion in reinstating the case. The plaintiffs respond that United Fire's failure to file a notice of appeal or a cross-appeal shows error has not been preserved. Assuming, without deciding, error has been preserved, we find no abuse of discretion by the trial court. *See Sladek v. G & M Midwest Floor Cleaning, Inc.*, 403 N.W.2d 774, 778 (Iowa 1987) ("The district court has a duty to exercise discretion in considering any application to reinstate.").

"accidental" fire "destroyed the property." The jury awarded the plaintiffs $236,901.52 in compensatory damages, and the court entered judgment on the verdict. Four years after the fire, in April 2011, the plaintiffs filed a satisfaction of judgment.

In June 2011 the plaintiffs filed a petition against United Fire, alleging the intentional tort of bad faith. They claimed (1) United Fire "knew it had no objective reasonable basis for the denial or failure to make payment" on their insurance claim, and (2) United Fire's "bad faith was the proximate cause of damage," including "lost profits, lost wages, [and] emotional distress." Plaintiffs also sought punitive damages for United Fire's "willful and intentional disregard" of the plaintiffs' rights.

**A. Motion to Dismiss.** United Fire filed a pre-answer motion to dismiss, alleging it had paid all sums due "with respect to the fire loss" and the bad faith claim is barred by the doctrines of "res judicata" and "claim preclusion." United Fire claimed because the plaintiffs did not assert their bad faith claim during the prior contract action, it is barred. In support, United Fire cited *Arnevik v. University of Minnesota Board of Regents*, 642 N.W.2d 315, 319 (Iowa 2002) ("A second claim is likely to be barred by claim preclusion where the 'acts complained of, and the recovery demanded are the same or when the same evidence will support both actions.'") (quoting *Whalen v. Connelly*, 621 N.W.2d 681, 685 (Iowa 2000)). United Fire also claimed neither Villarreal nor Martinez is an insured under the policy and the policy's named insured is La Casa Martinez Tex Mex, Inc.

The plaintiffs resisted, contending the bad faith claim is not the "same claim" as the previously adjudicated breach of contract claim. They stated the tort claim is based on "facts that came into existence after March 7, 2007 (the date of loss) including the state of mind of the insurance adjustor," the quality of United Fire's investigation of their claim, and "whether there exists a reasonable basis" for United Fire to deny payment. Those "facts are substantially different than the set of facts giving rise to the breach of contract claim," which focused on the value of the insured property and whether the plaintiffs had a policy on March 7 and met the conditions of the policy. The plaintiffs also claimed the tort remedies were not the same because noneconomic damages such as emotional distress could be recovered only in their bad faith claim. In support, the plaintiffs cited *Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 401 (Iowa 1982) ("The right to join related causes of action does not bar subsequent litigation of a distinct cause of action that was not joined. The situation is the same as with a permissive counterclaim.").

The district court framed the issue as "whether the doctrine of claim preclusion bars a bad faith claim against an insurance company when there has already been a prior law suit on the underlying policy." Relying on an Iowa case resolving the same issue, the court denied United Fire's motion to dismiss. *See Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 859 (Iowa 1990) ("The issue here is whether an insured estate which has recovered in a suit against its own insurance company for uninsured motorist benefits is thereafter precluded from suing the company for its alleged bad-faith failure to

settle the claim."). The *Leuchtenmacher* defendant sought dismissal, claiming "an action for bad-faith failure to settle must be brought simultaneously with the claim to recover the policy proceeds, and a bad-faith claim not so joined is barred by claim preclusion." *Id.* The district court agreed and ordered the case dismissed. *Id.* On appeal, our supreme court reversed and remanded, ruling:

> Whether the cases arise out of a single transaction or a series of transactions turns on whether there is "a natural grouping or common nucleus of operative facts" and involves "a determination whether the facts are so woven together as to constitute a single claim."
>
> The question of whether the estate's "bad-faith" case was precluded by the prior suit *depends on whether the cases arose out of the same facts.* We cannot conclude as a matter of law that they did. *In fact, a bad-faith claim might well be based on events subsequent to the filing of the suit on a policy and therefore could not be based on the "same" facts*.

*Id.* at 861 (emphasis added and citations omitted). Based on *Leuchtenmacher,* the district court denied United Fire's motion to dismiss, recognizing events "during the course of the prior litigation could be evidence of bad faith" and "the elements to establish breach of an insurance contract are different than the elements to establish bad faith."

**B. Motion for Summary Judgment.** Eighteen months later, United Fire filed a motion for summary judgment, contending (1) the plaintiffs' bad faith claim is barred by the doctrine of claim preclusion, and (2) neither Villarreal nor Martinez is an "insured" under the policy. The plaintiffs resisted. The district court first discussed the relationship between the breach of contract case and the tort case:

> The breach of contract case arises out of the fire and the value of the business. The bad faith case relies upon facts

occurring after the fire involving the company's handling of the case. *While the two matters are related, the claims are different.* The recovery demanded is also different. The first action involves damages based upon the value of the business. The bad faith action seeks damages outside of the terms of the contract. The evidence that would be presented in the breach of contract case depends largely upon evidence as to the value of the business. The bad faith case goes substantially beyond those facts and involves proof as to whether or not the insurance company's conduct was reasonable, and whether the insurance company knew or had reason to know its denial was without reasonable basis.

(Emphasis added.) The district court recognized the likelihood "the bad faith action would have been bifurcated from the breach of contract case" and the likelihood the "plaintiffs would have been denied access to the adjuster's file until the breach of contract case had been fully tried. Even if the cases were brought together, a second trial might ultimately be necessary." Further:

[W]hile the plaintiffs largely rely upon decisions made by [United Fire] prior to filing suit, there were some facts that occurred following the filing of the breach of contract lawsuit. Although [United Fire] could have retained an expert witness to verify [its] in-house estimate of the value of La Casa, it did not do so. Not all the facts that might be necessary to pursue the bad faith case would have been available if both cases had been tried at the same time.

Recognizing "there is not any Iowa case on point," the district court found persuasive a First Circuit decision—*Porn v. National Grange Mutual Insurance Co.*—and granted summary judgment to United Fire. 93 F.3d 31, 33-38 (1st Cir. 1996) (stating federal res judicata principles precluded a second suit against the defendant insurance company raising bad faith claims that could have been resolved in the initial breach of contract suit.). The district court ruled:

[In *Porn*,] [t]he attempt to characterize the breach of contract and bad faith claims as arising out of two transactions was described as "artificially narrow." *Id.* at 35. Both actions arise from

the insurance company's refusal to pay the claim. Just because the "two claims depend on different shadings of the facts or emphasize different elements of the facts," there are still facts which support both claims. *Id.* The facts underlying the two claims are closely related in time, space, origin, and motivation." *Id.*

*Porn* recognized that even if the two claims did not form a convenient trial unit, that any potential prejudice could be resolved by bifurcating the trial. *Id.* at 36. While this court questions whether both claims could be tried to the same jury, bringing both claims at once would allow a quicker resolution of both cases.

Finally, *Porn* recognized that some facts supporting the bad faith claim may be unknown to the plaintiffs until the first litigation has been completed. As in this case, the plaintiff in *Porn* relied upon litigation conduct in the first case. However, most of the factual allegations were made aware to *Porn* prior to the first lawsuit. Similarly, United Fire's refusal to pay plaintiffs' claim and lack of any real estate appraisal were known to plaintiffs prior to the first lawsuit. Indeed the plaintiffs repeatedly informed United Fire that [it] was acting in bad faith.[2]

---

[2] The *Porn* court stated the First Circuit pragmatically determines what factual grouping constitutes a "transaction" by analyzing the factors: (1) "whether the facts are related in time, space, origin, or motivation"; (2) "whether they form a convenient trial unit"; and (3) "whether their treatment as a unit conforms to the parties' expectations." 93 F.3d at 35 n.3. The *Porn* court first cited to cases ruling the facts are sufficiently related. *See id.* (citing *McCarty v. First of Ga. Ins. Co.*, 713 F.2d 609, 612-13 (10th Cir. 1983) (ruling Oklahoma law requires that no matter how many "rights" of a "plaintiff are violated in the course of a single wrong or occurrence, damages flowing therefrom must be sought in one suit," and the contract claim and tort claim "arose out of the same transaction," but also finding the "rule against splitting causes of action serves no purpose if a plaintiff cannot reasonably be expected to include all claims in the first action," i.e., where the plaintiff's omission "was brought about by defendant's fraud, deception, or wrongful conduct, the former judgment has been held not to be a bar to suit," and the company's wrongful concealment prevented the plaintiff from asserting their tort claim in the first action); *Chandler v. Commercial Union Ins. Co.*, 467 So. 2d 244, 250-51 (Ala. 1985) (distinguishing a prior Alabama case "where it was not clear when the plaintiff learned of the insurance company's alleged bad faith" and recognizing "a counterclaim seeking damages for the bad faith refusal to pay an insurance claim is a compulsory counterclaim" under the Alabama rules of civil procedure); *Duhaime v. Am. Reserve Life Ins. Co.*, 511 A.2d 333, 335 (Conn. 1986) (ruling plaintiff's second, lack-of-good-faith claim is barred by res judicata when both claims turn "on only one event: the defendant's refusal to pay in accordance with the terms of the disability insurance policy"); *Hubbell v. Trans World Life Ins. Co.*, 408 N.E.2d 918, 919 (N.Y. 1980) (ruling bad faith claim is barred by res judicata when "[t]here is nothing to indicate the present action grows out of any facts not known when the prior action was brought to recover on the policy but which subsequently came to light either in the course of the insurer's defense of the first action or thereafter"); *Stone v. Beneficial Standard Life Ins. Co.*, 542 P.2d 892, 894 (Or. 1975) (stating the court need not decide whether it would recognize an action for tortious

8

Although not required to do so, the district court also ruled the plaintiffs cannot rely upon judicial estoppel to allow the individual plaintiffs to pursue a bad faith claim against United Fire because the individual plaintiffs are not the named insureds in the insurance policy. This appeal followed.

## II. Scope and Standards of Review

We review appeals from orders granting summary judgment for the correction of legal error. *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 806 (Iowa 2011). Summary judgment is appropriate only when the entire record demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *see Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007).

We review the record before the district court to determine whether a genuine issue of material fact existed and whether the district court correctly

breach of contract because the rule in Oregon is "that because part of the [bad faith] claim could have been brought under a separate cause of action, it is no excuse for not applying res judicata when that portion of the claim could have readily been disposed of in the original proceeding")).

The *Porn* court then listed "the courts holding otherwise, i.e., that the facts underlying the contract and bad faith claims are unrelated." 93 F.3d at 35 n.3 (citing *Schmueser v. Burkburnett Bank*, 937 F.2d 1025, 1031 (5th Cir. 1991) (applying Texas res judicata law); *Robinson v. MFA Mut. Ins. Co.*, 629 F.2d 497, 501–02 (8th Cir.1980) (applying Arkansas law and stating the tort claim for deceit is an independent cause of action because in the first suit, the plaintiff "had no reason to believe, at least until trial," the insurance company was advancing anything other than bona fide defenses and also because the tort action "will require proof substantively different from that presented in [the plaintiff's] suit for policy proceeds"); *Corral v. State Farm Mut. Auto. Ins. Co.*, 155 Cal. Rptr. 342, 345 (Cal. Ct. App. 1979) (ruling arbitration proceeding to recover benefits under insurance contract was not res judicata to bad faith cause of action that was not based on facts surrounding the crash or the terms of the policy but on insurance company's actions thereafter); *but see Rios v. Allstate Ins. Co.*, 137 Cal. Rptr. 441, 445-46 (Cal. Ct. App. 1977) (dismissing the plaintiff's independent bad faith cause of action because the plaintiff failed to first use "the statutory procedure for setting aside an arbitration award for 'corruption, fraud or other undue means'")).

applied the law. *Sain v. Ceder Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 121 (Iowa 2001). The record on summary judgment includes the pleadings, depositions, affidavits, and exhibits presented. *Stevens*, 728 N.W.2d at 827. We review the evidence in the light most favorable to the nonmoving party, here the plaintiffs. *See Merriam v. Farm Bureau Ins.*, 793 N.W.2d 520, 522 (Iowa 2011).

## III. United Fire's Defense of Claim Preclusion

**A. General Principles.** Claim preclusion is a part of the doctrine of res judicata and bars further litigation on the same claim or cause of action. *Leuchtenmacher*, 460 N.W.2d at 859-60. "Res Judicata as claim preclusion applies when a litigant has brought an action, an adjudication has occurred, and the litigant is thereafter foreclosed from further litigation on the claim." *Israel v. Farmers Mut. Ins. Ass'n*, 339 N.W.2d 143, 146 (Iowa 1983); *see Geneva Corp. Fin. v. G.B.E. Liquidation Corp.*, 598 N.W.2d 331, 332 (Iowa Ct. App. 1999) ("Claim preclusion . . . is based on the principle a party may not split or try his claim piecemeal, but must put in issue and try his entire claim or put forth his entire defense in the case on trial.").

Thus, an "adjudication in a former suit between the same parties *on the same claim* is final as to all matters which could have been presented to the court for determination." *Israel*, 339 N.W.2d at 146 (emphasis added); *see Westway*, 314 N.W.2d at 401 ("A cause of action is the same when the asserted invasion of rights is the same. A plaintiff is not entitled to a second day in court simply by alleging a new ground of recovery for the same wrong."). When the second claim is the same as the first claim, the valid and final judgment on the first claim

"precludes a second action on that claim or any part of it." *Arnevik*, 642 N.W.2d at 319; *see Whalen*, 621 N.W.2d at 685 ("Claim preclusion is generally implicated where there has been a full and fair opportunity to litigate the claim—the claim was litigated, or it could have been, but was not.").

Therefore, a party must litigate all matters growing out of the same claim at one time rather than in separate actions. *B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 286 (Iowa 1976); *see Bennett v. MC No. 619, Inc.*, 586 N.W.2d 512, 517 (Iowa 1998) ("[A] party is not entitled to a 'second bite' simply by alleging a new theory of recovery for the same wrong."). In fact, claim preclusion "may preclude litigation on matters the parties never litigated in the first claim." *Pavone v. Kirke*, 807 N.W.2d 828, 835 (Iowa 2011) (stating courts analyze whether the "acts complained of and the recovery demanded are the same" and whether "the same evidence will support both actions").

Under these general principles, to successfully establish claim preclusion a defendant must show: (1) the parties in the first action and in the second action are the same parties; (2) in the first action there was a final judgment on the merits; and (3) the claim in the second action "could have been fully and fairly adjudicated in the prior case (i.e., both suits involve the same cause of action)." *Id.* at 836 (noting the failure to prove any one of these elements is fatal).

Here, the parties do not dispute the first two elements. Therefore, the essential questions before us are whether the subject matter and claims for relief in the earlier contract action and this bad faith tort action are the "same claim." We turn to cases discussing the general principles used to analyze whether two

separate lawsuits involve the "same cause of action" or "same claim." Our courts examine "'(1) the protected right, (2) the alleged wrong, and (3) the relevant evidence.'" *See id.* at 837 (quoting *Iowa Coal Min. Co. v. Monroe Cnty.*, 555 N.W.2d 418, 441 (Iowa 1996)).

In examining these elements, Iowa courts must "carefully distinguish between two cases involving the same cause of action—where claim preclusion bars initiation of the second suit—and two cases involving related causes of action—where claim preclusion does not bar initiation of the second suit." *Id.* This distinction is important because a plaintiff's "right to join related claims does not bar subsequent litigation of a distinct claim that was not joined." *Leuchtenmacher*, 460 N.W.2d at 860. Thus, "we must be careful to distinguish between the concept of the 'same' cause of action and the concept of a 'related' cause of action." *Iowa Coal*, 555 N.W.2d at 442. We recognize that "[w]hether or not the claims *could have been joined* is not controlling." *Geneva*, 598 N.W.2d at 334 (emphasis added). Accordingly, the fact that, at the plaintiff's option, the second claim could have been litigated in the first case "is of no consequence. If a second suit is brought upon a different claim or cause of action, the judgment in the first action operates as a bar only to questions actually litigated and determined in the original action, not what might have been litigated and determined." *Iowa Coal,* 555 N.W.2d at 444 ("What we have here is a situation in which the demand for recovery, the rights alleged to be infringed, and the applicable principles of law are different.").

In both *Leuchtenmacher* and the more recent 2011 *Pavone* case, our supreme court quoted approvingly to the Restatement (Second) explanation of a single cause of action:

> [A single cause of action] connotes a natural grouping or common nucleus of operative facts. Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held to be precluded. But the opposite does not hold true; even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series.

Restatement (Second) of Judgments § 24 cmt. b, at 199 (1982); *see Pavone*, 807 N.W.2d at 837 (upholding claim preclusion bar where the plaintiff's second suit was based on an alleged second breach of the same paragraph of the same contract because both cases involved the "same protected right"—the plaintiff's right to enter into negotiations with the defendant for the management of "any other casino in Iowa"—and also "the same alleged wrong—[the defendant's] failure to negotiate such an agreement in good faith pursuant to paragraph 5A" of the contract); *Leuchtenmacher*, 460 N.W.2d at 860.

We next set out four cases applying these principles. In *B & B Asphalt*, the court noted the challenged conduct by the defendant was the same in both actions and upheld the res judicata defense, stating:

> Here the same evidence would be probative in both actions. They arise from the same transaction and depend on evidence of the same events. The parties are agreed plaintiff's first action was based on a theory of fraud. Plaintiff's petition in the second action

is in three divisions.  In the first division, the conduct alleged in plaintiff's first action to be fraud is alleged instead to constitute express warranties.  In the second division, the same conduct is alleged to give rise to implied warranties.  In the third division, the same conduct is alleged to be negligent.

Claim preclusion is plainly applicable.  In his second action plaintiff sought a second day in court on the same claim he made in the first action.  *Only the theories of recovery are different.*  Plaintiff could have advanced all these theories in the first action.  It is barred by the defense of res judicata from seeking to do so in the second action.

242 N.W.2d at 287 (emphasis added).

In *Westway*, the court ruled the plaintiff "is free to bring separate actions on different provisions of a single lease"[3] and explained the plaintiff's "right to join related causes of action does not bar subsequent litigation of a distinct cause of action that was not joined.  The situation is the same as with a permissive counterclaim."  314 N.W.2d at 401 ("A cause of action is the same when the asserted invasion of rights is the same.").

---

[3] The plaintiff in *Westway* first brought a declaratory judgment action seeking to uphold its lease, define the leasehold boundaries, and determine the plaintiff's right to use the truck scales.  314 N.W.2d at 401.  The plaintiff sought damages for being denied the use of the truck scales, interference with moving a storage tank, and efforts to evict the plaintiff.  *Id.*  The plaintiff sought injunctive relief against interference with the occupancy of its leasehold.  *Id.*  A consent judgment confirmed the lease's validity, reformed the lease by describing the leasehold, and enjoined the defendants from interfering with the plaintiff's occupancy.  *Id.*

In the second action, the plaintiff alleged the defendants interfered with the plaintiff's rights under the same lease to use a steam line that crossed the defendants' property.  *Id.* at 400.  The district court awarded damages to the plaintiff.  *Id.*  The defendants appealed, asserting the second action was barred by res judicata because the lease was "completely examined and reformed" in the first action, and the plaintiff was obligated to litigate the steam line issue in the first action.  *Id.* at 401.  The *Westway* court rejected this defense, ruling the "protected right" in the second action was the alleged right to use the steam line; the alleged wrong was the defendants' denial of this use; the relevant evidence concerned whether the right was granted in the lease and if it was, whether the defendants wrongfully denied the right.  *Id.*

The *Westway* court "illustrated" a permissive-counterclaim case by citing approvingly to *Forrest Village*, where the plaintiff's first action challenged a government regulation as invalid and sought recovery of the entire prepayment charge, which regulation the court upheld. *See id.* (citing *Forrest Village Apts. Inc. v. United States*, 371 F.2d 500, 503-04 (Ct. Cl. 1967)). The *Forrest Village* plaintiff's second cause of action sought recovery of a percentage of the charges imposed based on the valid regulation. 371 F.2d at 503. While acknowledging the second action *could have been joined* with the first, the *Forrest Village* court nevertheless rejected the claim preclusion defense, stating:

> We have here, in short, a situation in which (i) the demand for recovery, the rights alleged to be infringed, and the applicable principles of law are different; and (ii) judgment in the present suit would not infringe rights established in the original action. In such circumstances, res judicata does not preclude the present litigation . . . . The fact that (at plaintiff's option) the question might have been litigated in that action is of no consequence.

*Id.*

Finally, in the *Iowa Coal* case cited by *Pavone*, the court explained "the principles of res judicata are applied much more narrowly where the second action is predicated upon a different cause or demand from the first action." 555 N.W.2d at 443. Plaintiff Iowa Coal's first action sought damages based on two theories, the ordinance (1) was invalid and (2) resulted in an unconstitutional taking of the plaintiff's property. Both theories sought the same recovery—the value of the plaintiff's business and the loss of royalties. *Id.* Iowa Coal was not successful in the first action. *Id.* Iowa Coal then sued for tortious interference— the protected right was its right to contract with Metro Waste without interference

from the defendant. *Id.* The alleged wrong was the defendant's interference with the protected right. The relevant evidence in the second suit concerned "whether there was a prospective contractual relationship with Metro Waste, and, if so, whether [the defendant] tortuously interfered with that relationship." *Id.*

The *Iowa Coal* court recognized "there was evidence before the district court in the first action from which the court could find [the defendant] interfered with this prospective contractual relationship." *Id.* The court concluded, however, the tortious interference claim was separate and distinct from the first claim:

> The two theories in *Iowa Coal I* and the tortious interference theory in the second action *require different proof.* To sustain the two theories in *Iowa Coal I*, Iowa Coal had to prove that ordinance 6 was invalid or that the passage of the ordinance constituted an unconstitutional taking of its property. To substantiate its takings claim, Iowa Coal had to prove that passage of ordinance 6 deprived Iowa Coal of all economically beneficial or productive use of its property.
> To substantiate its tortious interference claim . . . , Iowa Coal had to prove that [the defendant] improperly interfered with Iowa Coal's prospective contractual relationship with Metro Waste. As part of that proof, Iowa Coal had to prove [the defendant's] motive in its interference was to financially injure or destroy Iowa Coal. Additionally, Iowa Coal had to prove the profits it lost from such interference.
> What we have here is a situation in which the demand for recovery, the rights alleged to be infringed, and the applicable principles of law are different. Additionally, the award in the present action for the tortious interference claim would not infringe rights established in *Iowa Coal I*. In short, the causes of action or claims in the two lawsuits are not the same. In such circumstances, res judicata in the sense of claim preclusion does not bar the intentional interference claim inasmuch as such claim was not litigated or determined in *Iowa Coal I*. *The fact that at Iowa Coal's option the intentional interference claim might have been litigated in Iowa Coal I is of no consequence. If a second suit is brought upon a different claim or cause of action, the judgment in the first action operates as a bar only to questions actually litigated and*

*determined in the original action, not what might have been litigated and determined.*

*Id.* at 444 (emphasis added).

**B. Merits.** We first address United Fire's claim the protected right in both cases is the right to recover the proper amount under the insurance policy. When we look at the rights involved, we disagree. The plaintiffs' right under the first action—a contract claim—is the right to be paid the contracted-for insurance benefits after suffering an insured loss. *See Magnusson Agency v. Pub. Entity Nat'l Co.-Midwest*, 560 N.W.2d 20, 25 (Iowa 1997) (stating elements for breach of contract). In contrast, the plaintiffs' protected right under the *intentional* tort of bad faith is the right to have United Fire process its claim in a nontortious, reasonable manner. *See Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9, 12 (Iowa 1990) ("To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim."). Accordingly, the protected right of being paid contracted-for benefits is not the same as the protected right that the insurance company utilize an objectively and subjectively nontortious claim process. *See Westway*, 314 N.W.2d at 401 (holding res judicata did not bar a second action in which the relevant issue was whether the defendants *wrongfully* denied a right under the contract—the asserted invasion of rights was not the same).

United Fire also claims the alleged wrong is the same—it did not pay as much as the plaintiffs' claimed was due based on a disagreement as to the proper amount of damages. *See Pavone*, 807 N.W.2d at 835 (stating courts

analyze whether "the acts complained of" are the same). We believe, however, the alleged wrong in the first action was United Fire's breach of contract by failing to pay the amounts owed under the insurance policy while the alleged wrong in this tort action is United Fire's *knowing and intentional failure* to conduct its claim process and claim administration in a nontortious manner—a scope of conduct much broader than a mere failure to pay. See *Schmueser*, 937 F.2d at 1031 (ruling the two cases involved separate and distinct causes of action under Texas law where: (1) the actions have different theories of recovery, i.e., contract and tort; (2) the actions have different operative facts—the contract action "required nothing more than a showing that the conditions contained in the letter of credit were satisfied, yet the Bank refused to pay," in contrast the breach-of-duty-of-good-faith claim "required proof that the Bank engaged in unfair or dishonest conduct involving the letter of credit"; and (3) the actions have different measures of recovery—the Bank's contract-liability damages, in contrast the tort damages not available in the first contract action); *see also Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed. Cir. 1983) (stating "we find no authority that claim preclusion would apply to conduct of a different nature from that involved in the prior litigation").

We further note the recovery available in the contract action is not the same as the recovery the plaintiffs' seek in the tort action. *See Pavone*, 807 N.W.2d at 835 (stating courts analyze whether the "recovery demanded" is the same); *Iowa Coal*, 555 N.W.2d at 444 (finding claim preclusion inapplicable—the second action seeks "a far different recovery").

Finally, we turn to the "relevant evidence" element. *Pavone*, 807 N.W.2d at 835 (stating courts analyze whether "the same evidence will support both actions"). The *Iowa Coal* court instructed, the "test generally applied is to consider the identity of facts essential to their maintenance, or whether the same evidence would sustain both. If the same facts or evidence would sustain both," the second action is barred. 555 N.W.2d at 441. "If, however, the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other." *Id.*; *see Leuchtenmacher*, 460 N.W.2d at 861 (recognizing "a bad-faith claim might well be based on events subsequent to the filing of the suit on a policy and therefore could not be based on the 'same' facts").

Here, the relevant evidence in the contract case, as shown on the jury form, involved a determination of the value of the building and the value of the personal property. In contrast, in this tort action the jury will evaluate the facts showing *how* United Fire employees conducted the processing of the plaintiffs' claim and the employee's decision-making processes. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997) ("A first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first."). As one example, the internal discussions of the facts between the adjuster and the adjuster's supervisors would not be relevant to or discoverable in the contract action but would be both relevant and

discoverable in the tort action. Specifically, the first element the plaintiffs must prove is that United Fire objectively "had no reasonable basis for denying" their claim. *See Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473-74 (Iowa 2005) (stating the jury decides "whether evidence existed to justify denial of the claim" and recognizing the fact the insurer's position ultimately is not successful "is not sufficient by itself to establish the first element of a bad faith claim").

The second element the plaintiffs must establish in tort is that United Fire subjectively "knew or had reason to know" its denial "was without a reasonable basis." *See id.* at 474-75 ("An insurer's negligent or sub-par investigation or evaluation of a claim is relevant to the fact finder's determination of whether the insurer should have known its denial lacked a reasonable basis."). On this subjective element, the plaintiffs must provide evidence showing "the basis" for United Fire's valuation was unreasonable. *See id.* at 475. Because bad faith is an intentional tort, the evidence will involve the intent of the employees throughout the claim process. *See id.* Evidence of United Fire employees' intent and conduct during their processing of the plaintiffs' claim is not necessary for or relevant to the evidence proving damages for a breach of contract. *See Robinson*, 629 F.2d at 501–02 (stating the Arkansas tort claim for deceit is an independent cause of action, in part, because the tort action "will require proof substantively different from that presented in [the plaintiff's] suit for policy proceeds"); *Corral*, 155 Cal. Rptr. at 345 (ruling a proceeding to recover benefits under insurance contract was not res judicata to a bad-faith cause of action that was not based on facts surrounding the crash or the terms of the policy but on

the insurance company's actions thereafter). Therefore, unlike the *B & B Asphalt* case, the tort claim here does not depend on "evidence of the same events" and the "same conduct." 242 N.W.2d at 287.

United Fire points to the letters sent by the previous lawyer for the plaintiffs alleging it was acting in bad faith. However, we conclude the letters broadly alleging bad faith during the parties' negotiations of the insurance claim do not show the bar of claim preclusion is mandated. On the other hand, United Fire's file notes, discoverable only in the tort action, show its own attorney recognized the differences between the evidence needed for the breach-of-contract claim and the evidence needed for a potential bad-faith claim. In the file notes the attorney explained that if the first lawsuit for breach of contract had asserted bad faith, he would need to withdraw as an attorney and be a witness. But, as the first lawsuit did not assert bad faith, he explained he would not have to withdraw and would not need to testify. Thus, the file notes available in tort discovery provide additional support for our determination the relevant evidence is not the same.

Our discussion of the relevant evidence shows the facts in the two cases are not sufficiently related in time, space, origin, or motivation to constitute the same transaction and same claim. *See* Restatement (Second) of Judgments § 24, cmt. b, at 199. Neither do the claims form a convenient trial unit since the plaintiffs' discovery of United Fire's file notes showing its claim-processing decisions would logically occur after the conclusion of the litigation limited to a breach of contract. As the district court noted, trial to the same panel of jurors

after extended discovery on the bad-faith claim is not likely. *See id.* Also, a leading treatise recognizes that nearly all federal circuit courts agree claim preclusion is measured by claims that had accrued by the time of the original pleading in the earlier action and here, some of the evidence of bad faith occurred as late as during the first trial, for example, the surprising trial testimony of United Fire's primary claims adjuster that she had no opinion of the actual value of the building, in contrast to her file documentation, discoverable in the tort action, wherein she did, in fact, place a fair value on the building. *See* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4409, at 213-20 (2d ed. 2002) ("The rules that expand the dimensions of a cause of action as time goes on require clear identification of a stopping point. Most cases rule that an action need include only the portions of the claim due at the time of commencing that action, frequently observing that the opportunity to file a supplemental complaint is not an obligation . . . . Substantial disruption could result from forced amendment at any time after substantial discovery has been accomplished, and it is hard to justify any test relating to the progress of discovery or other pretrial events so clear that plaintiffs could afford to apply it without seeking explicit judicial guidance. The better rule is that a claim for damages need include only matters arising out of injuries inflicted before the action is filed."); *see, e.g., Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006) (rejecting the insurance company's argument res judicata applied because the plaintiff could have amended her complaint and also concluding the first suit under the UIM policy "does not prospectively

immunize the [insurance company] from liability for future actionable conduct for bad faith"); *Baker Group, L.C. v. Burlington N. & Santa Fe Ry. Co.*, 228 F.3d 883, 886 (8th Cir. 2000) (stating under the federal and Kansas rules of civil procedure the trial court "*may permit* a plaintiff to supplement its complaint with a cause of action arising after the original complaint"—the rules are "permissive for the parties and discretionary for the court" so that the plaintiff's failure to supplement its already-commenced action did not raise a res judicata bar precluding the second suit); *Florida Power & Light Co. v. United States*, 198 F.3d 1358, 1361 (Fed. Cir. 1999) (stating the two claims are sufficiently discrete and res judicata is inapplicable where the claims "call for a different legal analysis"); *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) (stating a plaintiff can seek leave to file a supplemental pleading when the defendant engages in actionable conduct after the lawsuit is filed "but there is no requirement that plaintiffs do so" and an "election not to do so is not penalized by application of res judicata").

In conclusion, because the protected right, the alleged wrong, the recovery sought, and the relevant evidence in the current tort lawsuit are different than in the prior contract lawsuit, claim preclusion does not apply to bar the plaintiffs' tort claim. *See Iowa Coal*, 555 N.W.2d at 444. ("What we have here is a situation in which the demand for recovery, the rights alleged to be infringed, and the applicable principles of law are different."). The plaintiffs' separate and distinct bad-faith tort claim, in the circumstances of this case, is a "related" permissible counterclaim as opposed to being the "same claim." *See Westway*, 314 N.W.2d at 401. As was the case in *Iowa Coal*, "[t]he fact that at [the

plaintiffs'] option the intentional [tort] claim might have been litigated in [the contract case] is of no consequence." 555 N.W.2d at 444. The plaintiffs' tort lawsuit, therefore, is not barred by the doctrine of claim preclusion, and the district court erred in so ruling.

## IV. Parties in Interest

The plaintiffs also appeal the district court's ruling that the individual plaintiffs, Villarreal and Martinez, are not entitled to recover in tort as insureds under the insurance policy. They contend under the doctrine of issue preclusion, United Fire cannot now claim the individual plaintiffs are not insured under the policy.

The doctrine of "issue preclusion provides once a court has decided an issue of fact or law necessary to its judgment, the same issue should not be relitigated in later proceedings." *Gardner v. Hartford Ins. Accident & Indem. Co.*, 659 N.W.2d 198, 202 (Iowa 2003) (stating issue preclusion protects litigants from "the vexation of relitigating identical issues with identical parties" and the doctrine "promotes judicial economy"). For issue preclusion to apply, the plaintiffs must prove four elements: (1) "the issue determined in the prior action is identical to the present issue"; (2) in the prior action, "the issue was raised and litigated"; (3) in the prior action, "the issue was material and relevant to the disposition"; and (4) in the prior action, "the determination made of the issue was necessary and essential to the resulting judgment." *Id.*

In paragraph 5 of the plaintiffs' breach-of-contract petition, they alleged the *plaintiffs* and United Fire "entered into a contractual agreement wherein [United

Fire] provided *the plaintiffs* with commercial property insurance." (Emphasis added.) United Fire's answer stated it "[a]dmits the allegation contained in paragraph 5." In paragraph 14 of the plaintiffs' breach-of-contract petition, they alleged: "*The plaintiffs* purchased the insurance coverage and executed the insurance contract in Cerro Gordo County, Iowa." (Emphasis added.) United Fire's answer stated it "[a]dmits the allegation contained in paragraph 14." Immediately prior to trial in the contract action, the parties informed the court of their stipulations that again showed the agreement of the parties on the factual issue of whether Ben Villarreal Jr. and Cleo Martinez were insureds under the policy:

> UNITED FIRE: Okay. Number 2, plaintiffs La Casa Martinez, Ben Villarreal, Jr., and Cleo Martinez were insured for the value of the building and the personal property with the defendant United Fire & Casualty. And number 3, the fire that destroyed the property in question in this lawsuit was accidental. And that's the end of our stipulation.
> PLAINTIFFS: Yes, so stipulated.
> THE COURT: . . . I'll just put that right in the instructions again, in writing, for the jury to review at the outset so they know what they don't have to decide. Thank you.

Thus, in the contract action United Fire stipulated Villarreal and Martinez were insureds under the United Fire policy rather than leaving that issue for the jury to determine. United Fire's check with a memo notation "satisfaction of judgment" listed all three plaintiffs as payees: "Ben Villarreal Jr., Cleo Martinez, and La Casa Martinez Tex Mex Inc."

The pleadings, the stipulation, and the check cover the identical issue raised in this tort action—whether Villarreal and Martinez were insureds— element one of issue preclusion, and was raised and resolved by the pleadings,

the stipulation, and the check in the contract action, element two. Whether Villarreal and Martinez were insureds under the policy was "material and relevant" to whether United Fire breached a contractual duty to them, element three. Finally, whether Villarreal and Martinez were insureds under the policy is a necessary determination before judgment for United Fire's breach of contract can be entered on their behalf, element four. We conclude issue preclusion bars United Fire from now claiming in the tort action that the individual plaintiffs, Villarreal and Martinez, are not insureds under the insurance policy.

**REVERSED AND REMANDED.**

Mullins, P.J., concurs; McDonald, J., dissents.

**MCDONALD, J.** (dissenting)

"Claim preclusion . . . is based on the principle that a party may not split or try his claim piecemeal . . . ." *See B & B Asphalt Co., Inc. v. T. S. McShane Co., Inc.*, 242 N.W.2d 279, 286 (Iowa 1976)*.* Thus, "[a]n adjudication in a former suit between the same parties on the same claim is final as to all matters which could have been presented to the court for determination, and a party must litigate all matters growing out of its claim at one time rather than in separate actions." *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 860 (Iowa 1990). I would hold the plaintiffs' second action is the "same claim" as that brought in their first action and is thus barred by the doctrine of claim preclusion. Accordingly, I respectfully dissent.

Iowa has adopted the transactional approach set forth in the Restatement (Second) of Judgments in determining whether a second claim is barred res judicata. *See id.* Under this approach, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24, at 196 (1982).

> What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Id.* "The expression 'transaction, or series of connected transactions,' is not capable of a mathematically precise definition; it invokes a pragmatic standard to be applied with attention to the facts of the cases." *Id.*, cmt. b. "In general, the

expression connotes a natural grouping or common nucleus of operative facts." *Id.* at 196.

The basis of my dissent is the majority's characterization of the claim at issue. In concluding the plaintiffs' second claim is not barred, the majority characterizes the second claim as the insurer's "knowing and intentional failure to conduct its claim process and claim administration in a nontortious manner—a scope of conduct much broader than a mere failure to pay." That is not the claim plaintiffs asserted. The plaintiffs' claim, as pleaded, is for "denying or failing to make payment on the insurance claims." Bad-faith claim processing and bad-faith claim denial are separate and distinct. *See, e.g.*, *Calvert v. Am. Family Ins. Grp.*, 711 N.W.2d 733 (Iowa Ct. App. 2006) (discussing claim for bad faith delay in processing claim); *Verne R. Houghton Ins. Agency, Inc. v. Orr Drywall Co.*, 470 N.W.2d 39, 41 (Iowa 1991) (noting cause of action for bad faith processing of claim); *Reuter v. State Farm Mut. Auto. Ins. Co., Inc.*, 469 N.W.2d 250, 253 (Iowa 1991) (noting causes of action for both kinds of claims). We are obligated to compare the claims actually asserted.

The plaintiffs' second claim, as pleaded by the plaintiffs, arises out of the same nucleus of operative facts as their first claim and is the "same claim" for claim preclusion purposes. Plaintiffs' first claim arose out of the defendant's failure to pay insurance benefits. Plaintiffs' second claim, as pleaded by the plaintiffs, arose out of the defendant's allegedly unreasonable failure to pay insurance benefits. In both cases, the critical operative fact is the denial of plaintiffs' insurance claim. The transactions are thus more than closely related in

time, space, and origin; they are identical. While the majority is correct that the insurer's reason for denying the claim is now at issue, that distinction does not deny the second suit arises out of the same transaction as the first. Of those courts that have adopted the transactional approach set forth in the Restatement (Second) of Judgments, the weight of authority holds that a second suit for bad faith claim denial is barred following a suit for breach of contract for failure to pay the claim. *See, e.g.*, *Reid v. Transp. Ins. Co.*, 502 Fed. App'x 157, 159-60 (3d. Cir. 2012) (applying New Jersey law and holding the entire controversy doctrine barred first-party bad-faith claim following first-party underinsured motorist litigation); *Rowe v. Liberty Mut. Ins. Co.*, 462 F.3d 521, 528–29 (6th Cir. 2006) (applying federal res judicata principles and holding claim barred); *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir. 1996) (applying "transactional approach" and barring subsequent bad faith claims that should have been raised in prior case for benefits); *Zweber v. State Farm Mut. Auto. Ins. Co.*, ___ F.Supp.2d ___, ___, 2014 WL 3900578, at *3 (W.D. Wash. Aug. 11, 2014) (holding bad-faith claim barred res judicata); *Smith v. State Farm Mut. Auto. Ins. Co.*, No. C12-1505-JCC, 2013 WL 1499265, at *6 (W.D. Wash. Apr. 11, 2013) (holding claim barred); *Stafford v. Jewelers Mut. Ins. Co.*, No. C12–0050, 2013 WL 796272, at *13 (S.D. Ohio Mar. 4, 2013) ("[A] majority of the courts that have considered whether the facts underlying a breach-of-insurance-contract claim and a bad-faith claim are sufficiently related for purposes of res judicata have concluded that both claims arise out of an insurer's refusal to pay the insured the proceeds of the policy."); *Madison v. Nationwide Mut. Ins. Co.*, No. C11–0157,

2012 WL 2919373, at *2–3 (W.D. Ky. July 17, 2012) (holding bad-faith claims barred res judicata); *Viscusi v. Progressive Universal Ins. Co.*, No. 2009AP942, 2010 WL 94024, at *2 (Wis. Ct. App.  Jan 12, 2010) (summarizing cases and concluding claim is barred); *Salazar v. State Farm Mut. Auto. Ins. Co.*, 148 P.3d 278 (Colo. App. 2006) (barring subsequent bad-faith action); *Powell v. Infinity Ins. Co.*, 922 A.2d 1073 (Conn. 2007) (same).

I would follow the majority rule and affirm the judgment of the district court.